# EXHIBIT A

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2023-Jul-12  15:49:13
04CV-23-1831
C19WD06 : 78 Pages

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

| | |
|---|---|
| ALEXIS LEAH FREEMAN GIBSON as<br>Ancillary Personal Representative of the<br>ESTATE OF WYATT GARY GIBSON,<br>Deceased and ALL WRONGFUL DEATH<br>BENEFICIARIES | **PLAINTIFFS** |
| Vs.                              CASE NO. _____ | |
| CONSUMER TESTING LABORATORIES, INC.,<br>UL VERIFICATION SERVICES, INC.,<br>EARTHBOUND LICENSING, LLC,<br>EARTHBOUND, LLC, EARTHBOUND PW<br>LLC, ROBERT BURGESS d/b/a BURGESS<br>GROUP a/k/a BOB BURGESS AND ASSOCIATES,<br>MELISSA METCALFE, MANE USA, INC.,<br>GALA NORTH AMERICA, INC., and<br>JOHN DOES 1-10 | **DEFEDANTS** |

**COMPLAINT**

COMES NOW, Plaintiffs ALEXIS LEAH FREEMAN GIBSON AS ANCILLARY PERSONAL REPRESENTATIVE OF THE ESTATE OF WYATT GARY GIBSON, DECEASED and all wrongful death beneficiaries ("Plaintiffs"), complain of Defendants, and in support would show the Court the following:

**PARTIES**

1. Plaintiff Alexis Leah Freeman Gibson is an individual residing in Calhoun, Georgia. Decedent Wyatt Gary Gibson was the only son of Alexis Leah Freeman Gibson. Plaintiff, Alexis Leah Freeman Gibson, brings claims individually and as ancillary personal representative of the Estate of Wyatt Gary Gibson. A copy of the file-marked Order appointing Alexis Leah Freeman Gibson as the Ancillary Personal Representative of the Estate of Wyatt Gary Gibson, deceased, is attached hereto as Exhibit "A".

Page 1 of 76

2. Defendant **Consumer Testing Laboratories, Inc.** ("CTL" or "Defendant CTL") is a foreign for-profit corporation. Defendant CTL is registered to do business in Arkansas, maintains its principal address in Bentonville, Benton County, Arkansas, and may be served via its registered agent, at 2601 SE Otis Corley Drive, Bentonville, Benton County, Arkansas 72712. Defendant CTL further maintains its hardlines testing laboratory located at 611 Dream Valley Road, Rogers, Benton County, Arkansas 72756. According to the Arkansas Secretary of State, Consumer Testing Laboratories, Inc., was merged into UL VERIFICATION SERVICES, INC. ("UL" or "Defendant UL") on May 26, 2020. UL Verification Services, Inc., may be served upon its registered agent, CT Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201, and collectively referred to hereinafter as CTL.

3. Defendant CTL registered to do business in this state and thus consented to in-state suits to do business in this forum. Further, this controversy relates to and arises out of Defendant CTL's activities and contacts with this state. Pursuant to applicable law and Ark. Code Ann. § 16-4-101, this Court has general and specific personal jurisdiction over Defendant CTL.

4. Defendant **Earthbound Licensing, LLC** ("Earthbound Licensing" or "Defendant Earthbound Licensing") is a foreign limited liability company. Defendant Earthbound Licensing is registered to do business in Arkansas and may be served via its registered agent, National Registered Agents, Inc. at 124 West Capitol Avenue, Suite 1900, Little Rock, Pulaski County, Arkansas 72201.

5. Defendant Earthbound Licensing registered to do business in this state and thus consented to in-state suits to do business in this forum. Further, this controversy relates to and arises out of Defendant Earthbound Licensing's activities and contacts with this state. Pursuant to applicable law and Ark. Code Ann. § 16-4-101, this Court has general and specific personal

jurisdiction over Defendant Earthbound Licensing.

6. Defendant **Earthbound LLC** ("Earthbound" or "Defendant Earthbound") is a foreign limited liability company. Defendant Earthbound maintains employees in this state and maintains an office at 2402 SE Cottonwood St # 6 Bentonville, Benton County, Arkansas 72712. Defendant Earthbound may be served via its registered agent, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

7. Defendant Earthbound conducts substantial business in this forum. Further, this controversy relates to and arises out of Defendant Earthbound's activities and contacts with this state. Pursuant to applicable law and Ark. Code Ann. § 16-4-101, this Court has general and specific personal jurisdiction over Defendant Earthbound.

8. Defendant **Earthbound PW LLC** ("Earthbound PW" or "Defendant Earthbound PW") is a foreign limited liability company. Defendant Earthbound PW is registered to do business in Arkansas and maintains an office at 2402 SE Cottonwood St # 6 Bentonville, Benton County, Arkansas 72712. Defendant Earthbound may be served via its registered agent, National Registered Agents, Inc. at 124 West Capitol Avenue, Suite 1900, Little Rock, Pulaski County, Arkansas 72201.

9. Defendant Earthbound PW registered to do business in this state and thus consented to in-state suits to do business in this forum. Further, this controversy relates to and arises out of Defendant Earthbound PW's activities and contacts with this state. Pursuant to applicable law and Ark. Code Ann. § 16-4-101, this Court has general and specific personal jurisdiction over Defendant Earthbound PW.

10. Defendant **Robert "Bob" Burgess d/b/a as Burgess Group a/k/a Bob Burgess & Associates** ("Burgess Group" or "Defendant Burgess Group") is a domestic business located in

this state. Defendant Burgess Group maintains an office at 210 N. Walton Boulevard, Suite 24, Bentonville, Benton County, Arkansas 72712. Defendant Burgess Group may be served via its president and owner, Robert "Bob" Burgess, at 109 W. Central Avenue, Bentonville, Benton County, Arkansas 72712. Defendant Burgess Group may also be served via its president and owner, Robert "Bob" Burgess, at his personal residence at 312 Southfield Drive, Vernon Hills, Illinois 60061.

11.     Defendant Burgess Group conducts substantial business in this forum. Defendant Burgess operates an office in this state and its employees are located in this state. Further, this controversy relates to and arises out of Defendant Burgess Group's activities and contacts within this state. Pursuant to applicable law and Ark. Code Ann. § 16-4-101, this Court has general and specific personal jurisdiction over Defendant Burgess Group.

12.     Defendant **Melissa Metcalfe** ("Metcalfe") is an individual residing in Bentonville, Benton County, Arkansas. She may be personally served at 404 SW Countrywood Road, Bentonville, Benton County, Arkansas 72712.

13.     This Court has personal jurisdiction over Defendant Metcalfe as she is a resident of this state.

14.     Defendant **MANE USA, Inc.** ("MANE" or "Defendant MANE") is a foreign for-profit corporation. Defendant MANE may be served via its registered agent, Corporation Service Company, at Princeton South Corporate Center, Suite 160, 100 Charles Ewing, New Jersey 08628.

15.     This controversy relates to and arises out of Defendant MANE's activities and contacts with this state. MANE directed its fragrance product into Arkansas and sold the fragrance ultimately incorporated into the subject contaminated product. MANE likewise communicated with the Arkansas-based entities and individuals identified in this Complaint regarding design,

development, formulation, and manufacture of the subject contaminated product. Pursuant to applicable law and Ark. Code Ann. § 16-4-101, this Court has specific personal jurisdiction over Defendant MANE.

16. Defendant **GALA North America Inc.** ("GALA" or "Defendant GALA") is a foreign for-profit corporation. Defendant GALA may be served via its registered agent, Paul G. Klockenbrink, at Gentry Locke, 10 Franklin Rd SE Ste 900, Roanoke, Virginia, 24011.

17. Defendant GALA maintains sufficient minimum contacts with this state such that its inclusion in this suit will not offend traditional notions of fair play and substantial justice. Defendant GALA purposefully availed itself of the privilege of conducting activities in this state and should reasonably anticipate being hauled into court here.

18. This controversy relates to and arises out of Defendant GALA's activities and contacts with this state. GALA's agents and employees played an active role in the design, development, formulation, supply, assembly, distribution, and manufacture of the subject contaminated product in conjunction and communication with the Arkansas-based entities and individuals identified in this Complaint regarding design, development, formulation, and manufacture of the subject contaminated product. Pursuant to applicable law and Ark. Code Ann. § 16-4-101, this Court has specific personal jurisdiction over Defendant GALA.

19. Defendants, **John Does 1 through 10**, represent unknown individuals or corporations who may have liability toward Plaintiffs regarding the design, development, formulation, supply, assembly, distribution, testing, inspection, and retail of a Better Homes & Garden aromatherapy product that killed five-year-old Wyatt Gibson. Plaintiffs will amend their Complaint, if necessary, to specifically name the proper individual Defendants as they are identified. An Affidavit is attached hereto as Exhibit "B" in accordance with Ark. Code Ann. §

16-56-125.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this lawsuit under Arkansas Code Annotated §16-60-201.

21.     Venue is proper in Benton County, Arkansas, under Arkansas Code Annotated §§16-60-101(a)(1), (a)(2)(A), and (a)(2)(B),because it is the county in which a substantial part of the events or omissions giving rise to the cause of action occurred, an individual defendant resided at the time of the event or omission giving rise to the cause of action, and is the county in which multiple corporate defendants had their principal office at the time of the event or omission giving rise to the cause of action.

22.     A substantial part of the events giving rise to the claim occurred in this county.

23.     All Defendants are subject to the jurisdiction of Arkansas state and, including this Court, *via* general or specific jurisdiction, and the Arkansas Long Arm Statute because the incidents and omissions made the basis of this suit primarily occurred in this county.

24.     This Court has personal jurisdiction over each Defendant because each Defendant has engaged in and continues to engage in foreseeable, intentional, continuous and systematic contacts within Arkansas, and specifically, with this county. Each defendant has sufficient minimum contacts, both in general and with regard to this specific action, such that exercising jurisdiction over the Defendants does not violate their right to due process or offend the traditional notions of fair play and substantial justice.

25.     At the time of the events made the basis of this suit and continuing through the present, the Defendants have engaged in a series of deliberate and concerted actions to do business in Arkansas by soliciting and doing business with Arkansas individuals and corporations, including

Walmart, Inc., and placing products into the stream of commerce with the knowledge and intent that these products will be distributed and sold to consumers in Arkansas. These collective activities accrued to Defendants the financial revenues and other benefits of doing business in Arkansas.

26.     Defendants could and did reasonably foresee that their actions would have consequences in Arkansas. Considering the totality of the circumstances, each Defendant purposely directed its activities at Arkansas.

27.     This litigation is a direct result of five-year-old Wyatt Gibson's fatal injuries arising from each Defendants' business activities directed at or performed in Arkansas. A direct relationship exists between the business activities of the Defendants and Arkansas.

28.     Many of the activities related to the contaminated product made the subject of this suit were directed to and in fact, occurred either in Arkansas or with an individual or business residing in Arkansas.

## FACTUAL BACKGROUND

### I. OVERVIEW

29.     In 2021, there was an outbreak of *Burkholderia pseudomallei* infection across the United States.

30.     *Burkholderia pseudomallei* is a rare and deadly bacterium primarily found in Southeast Asia. Infection with *Burkholderia pseudomallei* causes a deadly condition called melioidosis.

31.     As confirmed by the Centers for Disease Control and Prevention ("CDC"), a contaminated    aromatherapy    product    designed,    manufactured,    assembled,    imported,

distributed,supplied, and retailed by various companies and the Defendants to this action caused the outbreak.

32. Five-year-old Wyatt Gibson and others individuals were seriously injured and/or died due to the outbreak.

33. This action is about holding these parties accountable for Wyatt's injuries and subsequent death.

## II. THE SUBJECT AROMATHERAPY PRODUCT

34. In early 2021, Wyatt's parents purchased the Better Homes and Gardens Essential Oil Infused Aromatherapy Room Spray with Gemstones, Lavender & Chamomile ("Subject Aromatherapy Product"), from a Walmart located in and around Calhoun, Georgia.

35. The Subject Aromatherapy Product was meant to impart a pleasant smell to the consumer and to be inhaled or otherwise absorbed by the human body.

36. The Subject Aromatherapy Product was marketed as being safe for human absorption or consumption.

37. Aromatherapy sprays are marketed to the public as effective in relieving stress, promoting restful sleep, and promoting overall health and well-being, including in children.

38. The Subject Aromatherapy Product was assembled in India and was designed, manufactured, assembled, imported, distributed, tested, and retailed by Walmart, Inc., Flora Classique, Inc., Ramesh Flowers Private Limited, and the Defendants to this action.

## III. *BURKHOLDERIA PSEUDOMALLEI* AND *MELIOIDOSIS*

39.     *Burkholderia pseudomallei* is extremely rare in North America.[1]  *Burkholderia pseudomallei* only occurs naturally in the United States in Puerto Rico and the U.S. Virgin Islands.

40.     The United States Government considers *Burkholderia pseudomallei* a Tier 1 biological select agent and toxin (Tier 1 BSAT). Other Tier 1 BSAT include the Ebola virus and the Marberg virus.

41.     Infection with *Burkholderia pseudomallei* is a serious health risk for death. Eradication of the bacterium following infection is difficult. The bacterium is intrinsically resistant to many antibiotics.[2]

42.     The mortality rate for children infected with *Burkholderia pseudomallei* has been reported to be as high as 35 percent in parts of Asia.[3]

43.     Infection with *Burkholderia pseudomallei* is the causative agent of melioidosis.[4]

44.     Melioidosis is only found in individuals exposed to environments containing *Burkholderia pseudomallei*. Infection is acquired through cutaneous inoculation, inhalation, and aspiration. It is rare for people to get the disease from another person.[5]

45.     Approximately a dozen melioidosis cases are identified each year in the United States; these cases primarily occur among travelers and immigrants coming from places where the disease is widespread, such as Southeast Asia.

---

[1] *See Melioidosis: insights into the pathogenicity of Burkholderia pseudomallei*, Nature, Vol. 4 (2006).

[2] *Id.*

[3] *See id.*

[4] *See id.*

[5] *See id.*

46.     Melioidosis can present with an array of clinical signs and symptoms, including, but not limited to, localized pain or swelling; high fever; ulceration; cough; chest pain; headache; respiratory distress; abdominal discomfort; joint pain; disorientation; weight loss; central nervous system/brain infection; seizures, and death. More than 50 percent of cases present with pneumonia.

47.      Due to its nonspecific symptoms, melioidosis can initially be mistaken for other diseases, which can delay proper treatment.

### IV. The Outbreak and Five-Year-Old Wyatt Gibson's Injuries and Death

48.     In March 2021, an adult in Kansas was identified as infected with *Burkholderia pseudomallei*.

49.     In May 2021, the CDC identified two non-travel-related *Burkholderia pseudomallei* infections - an adult located in Minnesota and a four-year-old located in Texas.

50.     Plaintiffs' five-year-old son, Wyatt Gibson, was exposed to the Subject BHG Aromatherapy Product in the state of Georgia in the normal course of use in the household, as intended by the designers, manufacturers, assemblers, importers, distributors, suppliers, and retailers of the product.

51.     In July 2021, in the state of Georgia, Wyatt Gibson became ill with fatigue, nausea, vomiting, weakness, shallow breathing, and moderate dehydration.

52.     Wyatt Gibson died on July 16, 2021.

53.     Wyatt's death was initially and incorrectly attributed to a COVID-19 infection.

54.     An independent medical examination later determined the correct cause of death as disseminated melioidosis due to *Burkholderia pseudomallei* infection.

55.     The CDC subsequently tested the Subject Aromatherapy Product found in the Gibson home.

56.     On or about October 6, 2021, CDC testing confirmed the presence of *Burkholderia pseudomallei* in the Subject Aromatherapy Product.

57.     Based on genomic analysis, the CDC concluded that the four cases of melioidosis in Georgia, Kansas, Minnesota, and Texas in 2021 closely matched, indicating they all most likely share a common source of exposure, more specifically BHG-branded Aromatherapy Room Spray with Gemstones.

58.     Genomic analysis of the four patient isolates grouped closely with strains from Southeast Asia, as confirmed by the Bacterial Special Pathogens Branch of the CDC.

59.     The CDC confirmed the Lot Number of the Subject Aromatherapy Product as Lot No. 84140411420.

60.     On or about October 21, 2021, recalls of BHG-branded Aromatherapy Room Spray with Gemstones in six scents were initiated: Lavender & Chamomile (84140411420); Lemon & Mandarin (84140411421); Lavender (84140411422); Peppermint (84140411423); Lime & Eucalyptus (84140411424); and Sandalwood & Vanilla (84140411425).

61.     In the exercise of reasonable diligence, Plaintiffs could not have become aware of the probable causal connection between Wyatt's death and the Subject Aromatherapy Product prior to October 2021.

## V.   NEW ENGLAND JOURNAL OF MEDICINE

62.     In March 2022, the New England Journal of Medicine published a case report on the subject outbreak of melioidosis.[6]

---

[6] Gee, et al., *Multistate Outbreak of Melioidosis Associated with Imported Aromatherapy Spray*, N ENG J MED 386;9 (2022).

63.  The case study authors included highly qualified doctors and researchers from CDC, the Georgia Department of Public Health, Emory University School of Medicine, the Minnesota Department of Health, the Texas Department of State Health Services, and the University of Melbourne, VIC.

64.  The study concluded that isolates from the four individuals with melioidosis matched an isolate from the Subject BHG Aromatherapy Product.[7]

65.  The study concluded that the Subject BHG Aromatherapy Product "was the source of the exposure."[8]

66.  The study noted that the autopsy of Wyatt Gibson's autopsy revealed *Burkholderia pseudomallei* in Wyatt's lungs, liver, spleen, and brain.[9]

## VI. THE DEFECTIVE AND DANGEROUS NATURE OF THE SUBJECT AROMATHERAPY PRODUCT

67.  The Subject Aromatherapy Product was supplied in a defective condition that rendered it unreasonably dangerous for reasonably foreseeable use and consumption beyond that contemplated by the ordinary and reasonable buyer, and the defective condition was a proximate cause of the harm to decedent Wyatt Gibson and Plaintiffs.

68.  The Subject Aromatherapy Product substantially deviated from standard product specifications because it contained *Burkholderia pseudomallei*, which causes melioidosis.

69.  The Subject Aromatherapy Product was defective when it was designed, manufactured, assembled, inspected, tested, marketed, distributed, and sold in that its design and manufacture allowed it to become contaminated with *Burkholderia pseudomallei*.

---

[7] *Id*. at 862.

[8] *Id*. at 864.

[9] *Id*.

70.    There was inadequate importation, inspection, testing, and distribution of the Subject Aromatherapy Product in that an unreasonably dangerous product was placed into the stream of commerce in the United States.

71.    The Subject Aromatherapy Product was defective in that its design and manufacture allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product.

72.    The Subject Aromatherapy Product was defective and unreasonably dangerous in that its design and manufacture intended users to be exposed to potentially harmful substances, including deadly bacterium like *Burkholderia pseudomallei*.

73.    The Subject Aromatherapy Product was designed, manufactured, assembled, tested, supplied, and distributed in a manner that allowed it to transmit bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use through aerosolization, fluid leakage, and other means.

## VII.    ROLES IN THE DESIGN, MANUFACTURING, TESTING, ASSEMBLY, IMPORTATION, SUPPLY, DISTRIBUTION, AND RETAIL PROCESS

### A.    CTL

74.    Defendant CTL was an evaluator, tester, and approver of the subject aromatherapy products. Defendant CTL gave the product a pass rating and failed to detect the product's deficiencies which ultimately led to Wyatt Gibson's sickness and untimely death.

75.    The product's design, manufacture, assembly, importation, testing, and distribution deficiencies ultimately led to Wyatt's sickness and untimely death.

76.    Defendant CTL's acts and omissions caused the Subject Aromatherapy Product contaminated with *Burkholderia pseudomallei* to be distributed to consumers, thereby causing the injuries and death of Wyatt Gibson.

77.    Defendant CTL is subject to this product liability action brought for or on account

of personal injury and death caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, supply, warning, instruction, marketing, packaging, or labeling of the subject product.

### B. Earthbound Defendants

78.    The collective Earthbound Defendants (Earthbound Licensing, Earthbound, and Earthbound PW)(collectively herein "Earthbound" or "Earthbound Defendants") were a designer, manufacturer, and supplier of the Subject Aromatherapy Product; their employees, along with other Defendants in this action and others, played an active role in designing the product and its component parts. Defendants were, in part, responsible for compliance with standard requirements for this type of consumer product.

79.    As one of the product's designers and manufacturers, Earthbound participated in, and was responsible for, the manufacturing process of the Subject Aromatherapy Product and its supply.

80.    Earthbound was required to develop proper design, manufacturing, inspection, testing, quality control, and distribution practices that would prevent contamination of the Subject Aromatherapy Product with bacteria, including *Burkholderia pseudomallei*.

81.    The design, manufacturing, inspection, testing, quality control, assembly, and distribution practices conducted by Earthbound were done without proper consideration for the presence of bacteria.

82.    The product's design, manufacture, assembly, importation, testing, and distribution deficiencies ultimately led to Wyatt Gibson's sickness and untimely death.

83. Defendant Earthbound's acts and omissions caused the Subject Aromatherapy Product to become contaminated with *Burkholderia pseudomallei*, thereby causing the injuries and death of Wyatt Gibson.

84. Defendant is subject to this product liability action brought for or on account of personal injury and death caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of the subject product.

### C. Robert "Bob" Burgess and the Burgess Group Entities

85. Defendant Burgess Group was a designer, manufacturer, importer, and supplier of the Subject Aromatherapy Product; it acted as a representative and decision maker on behalf of companies related to the design, manufacture, importation distributing, and selling of the Subject Aromatherapy Product. Defendant's employees actively handled design and assembly issues directly with the Indian assembler.

86. Defendant Burgess Group and its employees played an active role in the design, formulation, importation, preparation, testing, warning, distribution, and assembly of the Subject Aromatherapy product and its supply.

87. As one of the product's designers and manufacturers, Defendant Burgess Group participated in, and was responsible for, the manufacturing process of the Subject Aromatherapy Product and its supply.

88. Defendant Burgess Group was required to develop proper design, manufacturing, inspection, testing, quality control, and distribution practices that would prevent contamination of the Subject Aromatherapy Product with bacteria, including *Burkholderia pseudomallei*.

89.     The design, manufacturing, inspection, testing, quality control, assembly, and distribution practices conducted by Burgess Group were done without proper consideration for the presence of bacteria.

90.     Defendant Burgess Group's acts and omissions caused the Subject Aromatherapy Product to become contaminated with *Burkholderia pseudomallei*, thereby causing the injuries and death of Wyatt Gibson.

91.     Defendant is subject to this product liability action brought for or on account of personal injury and death caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of the subject product.

### D.  Melissa Metcalfe

92.     Defendant Metcalfe was in a supervisorial/managerial role with Walmart Inc., and played an independent and active role in designing, manufacturing, importing, and supplying the Subject Aromatherapy Product on behalf of her employer, Walmart Inc.

93.     Defendant Metcalfe's acts and omissions caused the Subject Aromatherapy Product to become contaminated with *Burkholderia pseudomallei*, thereby causing the injuries and death of Wyatt Gibson.

94.     Defendant Metcalfe is subject to this product liability action brought for or on account of personal injury and death caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of the subject product.

### E.  MANE

95.     MANE and its employees played an active role in the design, manufacture,

distribution, and supply of the fragrance ultimately incorporated into the Subject Aromatherapy Product. MANE provided input regarding design, development, formulation, and manufacture of the Subject Aromatherapy Product and/or its component parts.

96. Defendant MANE and its employees played an active role in the design, development, formulation, and manufacture of the subject product and one of its core component parts.

97. As one of the product's designers and manufacturers, MANE participated in, and was responsible for, the manufacturing process of the Subject Aromatherapy Product.

98. MANE was required to develop proper design, manufacturing, inspection, testing, quality control, and distribution practices that would prevent contamination of the Subject Aromatherapy Product with bacteria, including *Burkholderia pseudomallei*.

99. The design, manufacturing, inspection, testing, quality control, assembly, and distribution practices conducted by MANE were done without proper consideration for the presence of bacteria.

100. Defendant MANE's acts and omissions caused the Subject Aromatherapy Product to become contaminated with *Burkholderia pseudomallei*, thereby causing the injuries and death of Wyatt Gibson.

101. Defendant is subject to this product liability action brought for or on account of personal injury and death caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of the subject product.

### F.    **GALA North America**

102. GALA is one of the largest manufacturers of candles and scents in the world.

103.	GALA maintains and controls Ramesh Flowers Private Limited, the Indian company that purportedly assembled the Subject Aromatherapy Products in India.

104.	GALA maintains and controls Flora Classique, Inc. one of the manufacturers, importers, and distributors of the Subject Aromatherapy Products.

105.	GALA agents and direct employees played an active role in the design, manufacture, importation, assembly, and distribution of the Subject Aromatherapy Products.

106.	GALA's agents and employees played an active role in the design, development, formulation, importation, distribution, and manufacture of the subject product in conjunction and communication with the Arkansas-based entities and individuals identified in this Complaint regarding design, development, formulation, importation, and manufacture of the subject product.

107.	In conjunction with other entities, GALA participated in the import of the Subject BHG Aromatherapy Product to the United States.

108.	As one of the product's manufacturers, GALA participated in, and was responsible for, the manufacturing process of the Subject Aromatherapy Product.

109.	As a designer, manufacturer, marketer, assembler, importer, and distributor of the Subject Aromatherapy Product, GALA was required to develop proper design, manufacturing, inspection, testing, quality control, and distribution practices that would prevent contamination of the Subject Aromatherapy Product with bacteria, including *Burkholderia pseudomallei*.

110.	The design, manufacturing, inspection, testing, quality control, assembly, and distribution practices conducted by GALA were done without proper consideration for the presence of bacteria.

111.   Defendant GALA's acts and omissions caused the Subject Aromatherapy Product to become contaminated with *Burkholderia pseudomallei*, thereby causing the injuries and death of Wyatt Gibson.

112.   Defendant GALA is subject to this product liability action brought for or on account of personal injury and death caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of the subject product.

## CLAIMS AGAINST DEFENDANTS

### I.   DEFENDANT CTL

#### A. Negligence

113.   All prior allegations are hereby incorporated by reference.

114.   Defendant had a duty to properly and safely evaluate, inspect, and test the Subject Aromatherapy Product and a duty to place a reasonably safe aromatherapy product in the stream of commerce.

115.   The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

116.   This duty of reasonable care required Defendant to ensure that the product was in full compliance with industry regulations and standards and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

117.    Defendant breached this duty of care by evaluating, inspecting, and testing the Subject Aromatherapy Product in a manner that made it defective and unreasonably dangerous for its intended and foreseeable use. This defect stems from the Subject Aromatherapy Product's propensity to permit the colonization and growth of bacterium and the ability of said bacteria to reach the ordinary consumer through aerosolization, fluid leakage, and other means.

118.    Defendant knew or reasonably should have known that the Subject Aromatherapy Product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

119.    Defendant knew or reasonably should have known that consumers of the Subject Aromatherapy Product would not realize the danger of potential transmission of deadly bacterium.

120.    Defendant owed Plaintiffs and Wyatt Gibson, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn importers, distributors, retailers, and consumers, including Plaintiffs and Wyatt G. Gibson, deceased, about these defects.

121.    Defendant failed to properly and timely warn importers, distributors, retailers and Plaintiffs and Wyatt Gibson, deceased, about these defects, thereby breaching its duty of care.

122.    Defendant owed Plaintiffs and Wyatt Gibson, deceased, a duty of reasonable care to follow adequate inspecting and testing processes to prevent the Subject Aromatherapy Product from becoming contaminated with deadly bacteria.

123.    Defendant breached its duty by failing to follow adequate inspecting and testing processes to prevent its products from becoming contaminated with deadly bacterium.

124.    Defendant had a duty to properly test the Subject Aromatherapy Product to ensure harmful bacteria were not present.

125. Defendant had a duty to understand the product specifications and designs of the Subject Aromatherapy Product.

126. Defendant had a duty to evaluate, inspect, test, and supply the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

127. Defendant breached each of its duties in the following ways:

a. Failing to understand the product specifications and designs of the Subject Aromatherapy Product.

b. Failing to exercise reasonable care in the evaluation, inspection, and testing of the Subject Aromatherapy Product and its packaging.

c. Failing to identify and implement quality control mechanisms in the manufacturing process of the Subject Aromatherapy Product to ensure that the product would not become contaminated with deadly bacteria.

d. Failing to inspect and test the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

128. As a direct and proximate result of Defendant's negligence, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

129. Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

130. Defendant's negligent acts and omissions were also reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover

punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### B. Failure to Warn/Instruct

131.    All prior allegations are hereby incorporated by reference.

132.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

133.    Defendant had a duty to evaluate and provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, the distributors and retailers of the product, and all end users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful substances through inhalation, leakage, skin contact, or other means.

134.    Defendant breached this duty by failing to provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, the distributors and retailers of the product, and all end users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful substances through inhalation, leakage, skin contact, or other means.

135.    As a direct and proximate result of Defendant's failure to warn, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

136.     Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

137.     Defendant's failure to warn users and consumers of a known and serious risk of harm from using the product was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### C.  Breach of Implied Warranties

138.     All prior allegations are hereby incorporated by reference.

139.     The defective and dangerous condition of the Subject Aromatherapy Product and lack of adequate warnings made it unfit for use generally and for the particular purpose of an aromatherapy product.

140.     Plaintiffs are hereby providing the requisite notice, as they have recently become aware of facts that would show that this Defendant breached a warranty and caused damages to Plaintiffs.

141.     The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of the Defendants. However, even if the subject elevator had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by Defendant.

142.     Wyatt Gibson is a third party who would foreseeably use and/or be affected by the Subject Aromatherapy Product.

143.     The Arkansas Code Annotated implies warranties of merchantability and fitness for a particular purpose in the sale (§§ 4-2-314, 4-2-315) and leasing (§§ 4-2A-212, 4-2A-213) of

goods, including the Subject Aromatherapy Product like the one that is the subject of this Complaint.

144.    Defendants breached those implied warranties by selling a defective aromatherapy product that violated the warranties of merchantability and fitness for a particular purpose.

145.    As a direct and proximate result of the Defendants' breach of warranties and pursuant to § 4-2-715 and § 4-2A-520, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages. Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

146.    Defendant's breach of warranties was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

## II.    EARTHBOUND DEFENDANTS

### A.  Products Liability – Strict Liability

147.    All prior allegations are hereby incorporated by reference.

148.    Defendant designed, manufactured, assembled, supplied, sold, marketed, labeled, imported, distributed, and placed into the stream of commerce a defective and unreasonably dangerous product, *i.e.* the Subject Aromatherapy Product and/or its component parts.

149.    The Subject Aromatherapy Product suffered from a manufacturing defect in that the product materially deviated from product specifications, as the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was

manufactured and/or left this Defendant's control. This rendered the product unreasonably dangerous.

150. The Subject Aromatherapy Product was defective in manufacture in that it differed from the intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacterium not intended or found in other units of the same product.

151. The Subject Aromatherapy Product was expected to reach and did reach consumers without substantial change in the condition in which it was sold and was, at the time of this incident, in essentially the same condition as when it left the hands of this Defendant.

152. The Subject Aromatherapy Product was defective because its design, manufacture, and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, encounter consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

153. The Subject Aromatherapy Product was defective in that its design allowed it to become contaminated with the rare and deadly bacterium, *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

154. The Subject Aromatherapy Product, as designed and manufactured by this Defendant, was otherwise defective.

155. The Subject Aromatherapy Product was defective in design and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design or formulation.

156. The Subject Aromatherapy Product was defective in design in that its use posed greater likelihood of injury than other alternative designs.

157.    The Subject Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by this Defendant.

158.    When the Subject Aromatherapy Product left this Defendant's possession, the Subject Aromatherapy Product was defective, and its condition made it unreasonably dangerous to Plaintiffs, including Wyatt Gibson, deceased. The Subject Aromatherapy Product was defective in that its design and manufacture allowed bacterium including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, encounter consumers like Wyatt Gibson, deceased, through aerosolization, fluid leakage, and other means.

159.    Defendant intended for the Subject Aromatherapy Product to be used as a household and/or consumer product, as it was by Plaintiffs.

160.    Defendant knew or should have known that the Subject Aromatherapy Product would be used as a household and/or consumer product, as it was by Plaintiffs.

161.    The Subject Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household and/or consumer product.

162.    The Subject Aromatherapy Product was defective and unreasonably dangerous in that its condition was dangerous beyond that which would be contemplated by the ordinary and reasonable buyer and/or end product user.

163.    At all times relevant, neither Plaintiffs nor Wyatt Gibson, deceased, could have discovered the unreasonably dangerous nature of the Subject Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the

Subject Aromatherapy Product. Thus, the unreasonably dangerous condition of the Subject Aromatherapy Product was unknowable to Plaintiffs and Wyatt Gibson, deceased.

164. The Subject Aromatherapy Product, as designed and manufactured, transmitted bacterium, including *Burkholderia pseudomallei*, directly to consumers during routine household and/or consumer use, including Wyatt Gibson, deceased, through aerosolization, fluid leakage, and other means.

165. The foreseeable risks of transmitting bacterium to consumers during household and/or consumer use, including Wyatt Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject Aromatherapy Product that is not defective.

166. The foreseeable risks of harm posed by the Subject Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable alternative design by this Defendant, and the omission of an alternative design renders the Subject Aromatherapy Product not reasonably safe for its intended use.

167. Plaintiffs and Wyatt Gibson, deceased, had a reasonable expectation that the Subject Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt Gibson, deceased, to develop a deadly infection.

168. The Subject Aromatherapy Product used by Plaintiffs as a household and/or consumer product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

169. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Aromatherapy Product, Wyatt Gibson was infected with *Burkholderia*

*pseudomallei*, developed melioidosis, suffered significant injuries, and died an untimely death. Plaintiffs are entitled to recover for the injuries and damages set forth herein.

170.   Pursuant to Arkansas Code Ann. § 16-116-101, this Defendant is strictly liable for all damages proximately caused by the defective and unreasonably dangerous condition of the Subject Aromatherapy Product.

171.   The damages that Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages. Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

172.   Defendant's defective and unreasonably dangerous condition of the Subject Aromatherapy Product was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

**B.  Failure to Warn/Instruct**

173.   All prior allegations are hereby incorporated by reference.

174.   The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

175.   Defendant had a duty to provide adequate warnings and information to foreseeable

users, such as Wyatt Gibson, his parents, distributors and retailers, and all users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful substances through inhalation, leakage, skin contact, or other means.

176.    Defendant breached this duty by failing to provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, distributors, and retailers, and all users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful substances through inhalation, leakage, skin contact, or other means.

177.    As a direct and proximate result of Defendant's failure to warn, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

178.    Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

179.    Defendant's failure to warn users and consumers of a known and serious risk of harm from using the product was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### C. **Negligence**

180.    All prior allegations are hereby incorporated by reference.

181.    Defendant had a duty to properly and safely design, test, assemble, market, manufacture, maintain, supply, import, distribute, warn, and inspect the Subject Aromatherapy Product and a duty to place a reasonably safe aromatherapy product in the stream of commerce.

182. The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

183. This duty of reasonable care required this Defendant to ensure that the product was in full compliance with industry regulations and standards and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

184. Defendant breached this duty of care by designing, testing, assembling, manufacturing, importing, marketing, and distributing the Subject Aromatherapy Product in a manner that made the product defective and unreasonably dangerous for its intended and foreseeable use. This defect stems from the Subject Aromatherapy Product's propensity to permit the colonization and growth of bacterium and the ability of said bacteria to reach the ordinary consumer through aerosolization, fluid leakage, and other means.

185. Defendant further breached its duty of care by allowing the Subject Aromatherapy Product to become contaminated with *Burkholderia pseudomallei* and then sold to the end-user without being properly disinfected.

186. Defendant knew or reasonably should have known that the Subject Aromatherapy Product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

187. Defendant knew or reasonably should have known that consumers of the Subject Aromatherapy Product would not realize the danger of potential transmission of deadly bacterium.

188.    Defendant owed Plaintiffs and Wyatt Gibson, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn importers, distributors, retailers, and consumers, including Plaintiffs and Wyatt Gibson, deceased, about these defects.

189.    Defendant failed to properly and timely warn importers, distributors, retailers and Plaintiffs and Wyatt Gibson, deceased, about these defects, thereby breaching its duty of care.

190.    Defendant owed Plaintiffs and Wyatt G. Gibson, deceased, a duty of reasonable care to follow good design, manufacturing, assembling, and distributing processes to prevent the Subject Aromatherapy Product from becoming contaminated with deadly bacteria.

191.    Defendant breached its duty by failing to follow good design, manufacturing, assembling, and distributing processes to prevent its products from becoming contaminated with deadly bacterium.

192.    Defendant had a duty to act as a prudent supplier of a consumer product meant for human exposure, including properly test the Subject Aromatherapy Product to ensure harmful bacteria were not present.

193.    Defendant had a duty to understand the product specifications and designs of the Subject Aromatherapy Product.

194.    Defendant had a duty to exercise reasonable care in manufacturing the Subject BHG Aromatherapy Product.

195.    Defendant had a duty to inspect, test, and manufacture the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

196.    Defendant had a duty to identify and implement quality control mechanisms in the manufacturing process of the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

197.    Defendant had a duty to inspect the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

198.    Defendant breached each of its duties in the following ways:

a.    Failing to fully understand its obligations as a designer, manufacturer, distributor, and supplier under the law.Failing to understand the product specifications and designs of the Subject Aromatherapy Product.

e.    Failing to exercise reasonable care in designing, manufacturing, and supplying the Subject Aromatherapy Product.

f.    Failing to inspect and test the foreign manufacturing facilities manufacturing the Subject Aromatherapy Product.

g.    Failing to identify and implement quality control mechanisms in the design and manufacturing process of the Subject Aromatherapy Product to ensure that the product would not become contaminated with deadly bacteria.

h.    Failing to inspect and test the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

199.    As a direct and proximate result of Defendant's negligence, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

200.    Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

201.    Defendant's negligent acts and omissions were also reckless, willful, wanton,

heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### D.  Breach of Implied Warranties

202.    All prior allegations are hereby incorporated by reference.

203.    The defective and dangerous condition of the Subject Aromatherapy Product and lack of adequate warnings made it unfit for use generally and for the particular purpose of an aromatherapy product.

204.    Plaintiffs are hereby providing the requisite notice, as they have recently become aware of facts that would show that this Defendant breached a warranty and caused damages to Plaintiffs.

205.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of the Defendants. However, even if the subject elevator had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by Defendant.

206.    Wyatt Gibson is a third party who would foreseeably use and/or be affected by the Subject Aromatherapy Product.

207.    The Arkansas Code Annotated implies warranties of merchantability and fitness for a particular purpose in the sale (§§ 4-2-314, 4-2-315) and leasing (§§ 4-2A-212, 4-2A-213) of goods, including the Subject Aromatherapy Product like the one that is the subject of this Complaint.

208.    Defendants breached those implied warranties by selling a defective aromatherapy product that violated the warranties of merchantability and fitness for a particular purpose.

209. As a direct and proximate result of the Defendants' breach of warranties and pursuant to Ark. Code Ann. § 4-2-715 and § 4-2A-520, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages. Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

210. Defendant's breach of warranties was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

III.     **DEFENDANT ROBERT BURGESS D/B/A BURGESS GROUP A/K/A BOB BURGESS & ASSOCIATES**

A. **Products Liability – Strict Liability**

211. All prior allegations are hereby incorporated by reference.

212. Defendant designed, manufactured, assembled, supplied, sold, marketed, labeled, distributed, and placed into the stream of commerce a defective and unreasonably dangerous product, *i.e.* the Subject Aromatherapy Product and/or its component parts.

213. The Subject Aromatherapy Product suffered from a manufacturing defect in that the product materially deviated from product specifications, as the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or left this Defendant's control. This rendered the product unreasonably dangerous.

214. The Subject Aromatherapy Product was defective in manufacture in that it differed from the intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacterium not intended or found in other units of the same product.

215. The Subject Aromatherapy Product was expected to reach and did reach consumers without substantial change in the condition in which it was sold and was, at the time of this incident, in essentially the same condition as when it left the hands of this Defendant.

216. The Subject Aromatherapy Product was defective because its design, manufacture, and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, encounter consumers, like Wyatt Gibson, deceased, through aerosolization, fluid leakage, and other means.

217. The Subject Aromatherapy Product was defective in that its design allowed it to become contaminated with the rare and deadly bacterium, *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

218. The Subject Aromatherapy Product, as designed and manufactured by this Defendant, was otherwise defective.

219. The Subject Aromatherapy Product was defective in design and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design or formulation.

220. The Subject Aromatherapy Product was defective in design in that its use posed greater likelihood of injury than other alternative designs.

221. The Subject Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by this Defendant.

222.    At the time the Subject Aromatherapy Product left this Defendant's possession, the Subject Aromatherapy Product was defective, and its condition made it unreasonably dangerous to Plaintiffs, including Wyatt Gibson, deceased. The Subject Aromatherapy Product was defective in that its design and manufacture allowed bacterium including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, come into contact with consumers like Wyatt Gibson, deceased, through aerosolization, fluid leakage, and other means.

223.    Defendant intended for the Subject Aromatherapy Product to be used as a household and/or consumer product, as it was by Plaintiffs.

224.    Defendant knew or should have known that the Subject Aromatherapy Product would be used as a household and/or consumer product, as it was by Plaintiffs.

225.    The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household and/or consumer product.

226.    The Subject Aromatherapy Product was defective and unreasonably dangerous in that its condition was dangerous beyond that which would be contemplated by the ordinary and reasonable buyer and/or end product user.

227.    At all times relevant, neither Plaintiffs nor Wyatt Gibson, deceased, could have discovered the unreasonably dangerous nature of the Subject Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Aromatherapy Product. Thus, the unreasonably dangerous condition of the Subject Aromatherapy Product was unknowable to Plaintiffs and Wyatt Gibson, deceased.

228. The Subject Aromatherapy Product, as designed and manufactured, transmitted bacterium, including *Burkholderia pseudomallei*, directly to consumers during routine household and/or consumer use, including Wyatt Gibson, deceased, through aerosolization, fluid leakage, and other means.

229. The foreseeable risks of transmitting bacterium to consumers during household and/or consumer use, including Wyatt Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject Aromatherapy Product that is not defective.

230. The foreseeable risks of harm posed by the Subject Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable alternative design by this Defendant, and the omission of an alternative design renders the Subject Aromatherapy Product not reasonably safe for its intended use.

231. Plaintiffs and Wyatt Gibson, deceased, had a reasonable expectation that the Subject Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt G. Gibson, deceased, to develop a deadly infection.

232. The Subject Aromatherapy Product used by Plaintiffs as a household and/or consumer product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

233. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Aromatherapy Product, Wyatt Gibson was infected with *Burkholderia pseudomallei*, developed melioidosis, suffered significant injuries, and died an untimely death. Plaintiffs are entitled to recover for the injuries and damages set forth herein.

234.    Pursuant to Arkansas Code Ann. § 16-116-101, this Defendant is strictly liable for all damages proximately caused by the defective and unreasonably dangerous condition of the Subject Aromatherapy Product.

235.    The damages that Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages. Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

236.    Defendant's defective and unreasonably dangerous condition of the Subject Aromatherapy Product was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### B.  Failure to Warn/Instruct

237.    All prior allegations are hereby incorporated by reference.

238.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

239.    Defendant had a duty to provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, and all users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful

substances through inhalation, leakage, skin contact, or other means.

240.    Defendant breached this duty by failing to provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, distributors, and retailers, and all users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful substances through inhalation, leakage, skin contact, or other means.

241.    As a direct and proximate result of Defendant's failure to warn, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

242.    Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

243.    Defendant's failure to warn users and consumers of a known and serious risk of harm from using the product was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### C.    <u>Negligence</u>

244.    All prior allegations are hereby incorporated by reference.

245.    Defendant had a duty to properly and safely design, test, assemble, market, manufacture, maintain, supply, import, distribute, warn, and inspect the Subject Aromatherapy Product and a duty to place a reasonably safe aromatherapy product in the stream of commerce.

246.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of

the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

247.    This duty of reasonable care required this Defendant to ensure that the product was in full compliance with industry regulations and standards and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

248.    Defendant breached this duty of care by designing, testing, assembling, manufacturing, importing, marketing, and distributing the Subject Aromatherapy Product in a manner that made the product defective and unreasonably dangerous for its intended and foreseeable use. This defect stems from the Subject Aromatherapy Product's propensity to permit the colonization and growth of bacterium and the ability of said bacteria to reach the ordinary consumer through aerosolization, fluid leakage, and other means.

249.    Defendant further breached its duty of care by allowing the Subject Aromatherapy Product to become contaminated with *Burkholderia pseudomallei* and then sold to the end-user without being properly disinfected.

250.    Defendant knew or reasonably should have known that the Subject Aromatherapy Product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

251.    Defendant knew or reasonably should have known that consumers of the Subject Aromatherapy Product would not realize the danger of potential transmission of deadly bacterium.

252.    Defendant owed Plaintiffs and Wyatt Gibson, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn importers, distributors, retailers, and consumers, including Plaintiffs and Wyatt Gibson, deceased, about these defects.

253.    Defendant failed to properly and timely warn importers, distributors, retailers and Plaintiffs and Wyatt Gibson, deceased, about these defects, thereby breaching its duty of care.

254.    Defendant owed Plaintiffs and Wyatt Gibson, deceased, a duty of reasonable care to follow good design, manufacturing, assembling, and distributing processes to prevent the Subject Aromatherapy Product from becoming contaminated with deadly bacteria.

255.    Defendant breached its duty by failing to follow good design, manufacturing, assembling, and distributing processes to prevent its products from becoming contaminated with deadly bacterium.

256.    Defendant had a duty to act as a prudent supplier of a consumer product meant for human exposure, including properly test the Subject Aromatherapy Product to ensure harmful bacteria were not present.

257.    Defendant had a duty to understand the product specifications and designs of the Subject Aromatherapy Product.

258.    Defendant had a duty to exercise reasonable care in manufacturing the Subject BHG Aromatherapy Product.

259.    Defendant had a duty to inspect, test, and manufacture the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

260.    Defendant had a duty to identify and implement quality control mechanisms in the manufacturing process of the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

261.    Defendant had a duty to inspect the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

262.    Defendant breached each of its duties in the following ways:

i.    Failing to fully understand its obligations as a manufacturer, distributor, and importer under the law.

j.    Failing to understand the product specifications and designs of the Subject Aromatherapy Product.

k.    Failing to exercise reasonable care in manufacturing the Subject Aromatherapy Product.

l.    Failing to inspect and test the foreign manufacturing facilities manufacturing the Subject Aromatherapy Product.

m.    Failing to identify and implement quality control mechanisms in the manufacturing process of the Subject Aromatherapy Product to ensure that the product would not become contaminated with deadly bacteria.

n.    Failing to inspect and test the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

263.    As a direct and proximate result of Defendant's negligence, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

264.    Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

265. Defendant's negligent acts and omissions were also reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### D. Breach of Implied Warranties

266. All prior allegations are hereby incorporated by reference.

267. The defective and dangerous condition of the Subject Aromatherapy Product and lack of adequate warnings made it unfit for use generally and for the particular purpose of an aromatherapy product.

268. Plaintiffs are hereby providing the requisite notice, as they have recently become aware of facts that would show that this Defendant breached a warranty and caused damages to Plaintiffs.

269. The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of the Defendants. However, even if the subject elevator had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by Defendant.

270. Wyatt Gibson is a third party who would foreseeably use and/or be affected by the Subject Aromatherapy Product.

271. The Arkansas Code Annotated implies warranties of merchantability and fitness for a particular purpose in the sale (§§ 4-2-314, 4-2-315) and leasing (§§ 4-2A-212, 4-2A-213) of goods, including the Subject Aromatherapy Product like the one that is the subject of this Complaint.

272. Defendants breached those implied warranties by selling a defective aromatherapy

product that violated the warranties of merchantability and fitness for a particular purpose.

273.   As a direct and proximate result of the Defendants' breach of warranties and pursuant to § 4-2-715 and § 4-2A-520, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages. Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

274.   Defendant's breach of warranties was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

## IV.   DEFENDANT MANE

### A.  Products Liability – Strict Liability

275.   All prior allegations are hereby incorporated by reference.

276.   Defendant designed, manufactured, assembled, supplied, sold, marketed, labeled, distributed, and placed into the stream of commerce a defective and unreasonably dangerous product, *i.e.* the Subject Aromatherapy Product and/or its component parts.

277.   The Subject Aromatherapy Product suffered from a manufacturing defect in that the product materially deviated from product specifications, as the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or left this Defendant's control. This rendered the product unreasonably dangerous.

278.    The Subject Aromatherapy Product was defective in manufacture in that it differed from the intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacterium not intended or found in other units of the same product.

279.    The Subject Aromatherapy Product was expected to reach and did reach consumers without substantial change in the condition in which it was sold and was, at the time of this incident, in essentially the same condition as when it left the hands of this Defendant.

280.    The Subject Aromatherapy Product was defective because its design, manufacture, and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, encounter consumers, like Wyatt Gibson, deceased, through aerosolization, fluid leakage, and other means.

281.    The Subject Aromatherapy Product was defective in that its design allowed it to become contaminated with the rare and deadly bacterium, *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

282.    The Subject Aromatherapy Product, as designed and manufactured by this Defendant, was otherwise defective.

283.    The Subject Aromatherapy Product was defective in design and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design or formulation.

284.    The Subject Aromatherapy Product was defective in design in that its use posed greater likelihood of injury than other alternative designs.

285.    The Subject Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by this Defendant.

286.    At the time the Subject Aromatherapy Product left this Defendant's possession, the Subject Aromatherapy Product was defective, and its condition made it unreasonably dangerous to Plaintiffs, including Wyatt G. Gibson, deceased. The Subject Aromatherapy Product was defective in that its design and manufacture allowed bacterium including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, come into contact with consumers like Wyatt Gibson, deceased, through aerosolization, fluid leakage, and other means.

287.    Defendant intended for the Subject Aromatherapy Product to be used as a household and/or consumer product, as it was by Plaintiffs.

288.    Defendant knew or should have known that the Subject Aromatherapy Product would be used as a household and/or consumer product, as it was by Plaintiffs.

289.    The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household and/or consumer product.

290.    The Subject Aromatherapy Product was defective and unreasonably dangerous in that its condition was dangerous beyond that which would be contemplated by the ordinary and reasonable buyer and/or end product user.

291.    At all times relevant, neither Plaintiffs nor Wyatt Gibson, deceased, could have discovered the unreasonably dangerous nature of the Subject Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Aromatherapy Product. Thus, the unreasonably dangerous condition of the Subject Aromatherapy Product was unknowable to Plaintiffs and Wyatt Gibson, deceased.

292. The Subject Aromatherapy Product, as designed and manufactured, transmitted bacterium, including *Burkholderia pseudomallei*, directly to consumers during routine household and/or consumer use, including Wyatt Gibson, deceased, through aerosolization, fluid leakage, and other means.

293. The foreseeable risks of transmitting bacterium to consumers during household and/or consumer use, including Wyatt Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject Aromatherapy Product that is not defective.

294. The foreseeable risks of harm posed by the Subject Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable alternative design by this Defendant, and the omission of an alternative design renders the Subject Aromatherapy Product not reasonably safe for its intended use.

295. Plaintiffs and Wyatt Gibson, deceased, had a reasonable expectation that the Subject Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt Gibson, deceased, to develop a deadly infection.

296. The Subject Aromatherapy Product used by Plaintiffs as a household and/or consumer product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

297. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Aromatherapy Product, Wyatt Gibson was infected with *Burkholderia pseudomallei*, developed melioidosis, suffered significant injuries, and died an untimely death. Plaintiffs are entitled to recover for the injuries and damages set forth herein.

298.    Pursuant to Arkansas Code Ann. § 16-116-101, this Defendant is strictly liable for all damages proximately caused by the defective and unreasonably dangerous condition of the Subject Aromatherapy Product.

299.    The damages that Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages. Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

300.    Defendant's defective and unreasonably dangerous condition of the Subject Aromatherapy Product was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### B. <u>Failure to Warn/Instruct</u>

301.    All prior allegations are hereby incorporated by reference.

302.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

303.    Defendant had a duty to provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, and all users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful

substances through inhalation, leakage, skin contact, or other means.

304.    Defendant breached this duty by failing to provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, distributors, and retailers, and all users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful substances through inhalation, leakage, skin contact, or other means.

305.    As a direct and proximate result of Defendant's failure to warn, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

306.    Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

307.    Defendant's failure to warn users and consumers of a known and serious risk of harm from using the product was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### C.  Negligence

308.    All prior allegations are hereby incorporated by reference.

309.    Defendant had a duty to properly and safely design, test, assemble, market, manufacture, maintain, supply, import, distribute, warn, and inspect the Subject Aromatherapy Product and a duty to place a reasonably safe aromatherapy product in the stream of commerce.

310.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of

the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

311.    This duty of reasonable care required this Defendant to ensure that the product was in full compliance with industry regulations and standards and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

312.    Defendant breached this duty of care by designing, testing, assembling, manufacturing, importing, marketing, and distributing the Subject Aromatherapy Product in a manner that made the product defective and unreasonably dangerous for its intended and foreseeable use. This defect stems from the Subject Aromatherapy Product's propensity to permit the colonization and growth of bacterium and the ability of said bacteria to reach the ordinary consumer through aerosolization, fluid leakage, and other means.

313.    Defendant further breached its duty of care by allowing the Subject Aromatherapy Product to become contaminated with *Burkholderia pseudomallei* and then sold to the end-user without being properly disinfected.

314.    Defendant knew or reasonably should have known that the Subject Aromatherapy Product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

315.    Defendant knew or reasonably should have known that consumers of the Subject Aromatherapy Product would not realize the danger of potential transmission of deadly bacterium.

316. Defendant owed Plaintiffs and Wyatt Gibson, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn importers, distributors, retailers, and consumers, including Plaintiffs and Wyatt Gibson, deceased, about these defects.

317. Defendant failed to properly and timely warn importers, distributors, retailers and Plaintiffs and Wyatt Gibson, deceased, about these defects, thereby breaching its duty of care.

318. Defendant owed Plaintiffs and Wyatt G. Gibson, deceased, a duty of reasonable care to follow good design, manufacturing, assembling, and distributing processes to prevent the Subject Aromatherapy Product from becoming contaminated with deadly bacteria.

319. Defendant breached its duty by failing to follow good design, manufacturing, assembling, and distributing processes to prevent its products from becoming contaminated with deadly bacterium.

320. Defendant had a duty to act as a prudent supplier of a consumer product meant for human exposure, including properly test the Subject Aromatherapy Product to ensure harmful bacteria were not present.

321. Defendant had a duty to understand the product specifications and designs of the Subject Aromatherapy Product.

322. Defendant had a duty to exercise reasonable care in manufacturing the Subject BHG Aromatherapy Product.

323. Defendant had a duty to inspect, test, and manufacture the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

324. Defendant had a duty to identify and implement quality control mechanisms in the manufacturing process of the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

325.    Defendant had a duty to inspect the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

326.    Defendant breached each of its duties in the following ways:

o.  Failing to fully understand its obligations as a manufacturer, distributor, and importer under the law.

p.  Failing to understand the product specifications and designs of the Subject Aromatherapy Product.

q.  Failing to exercise reasonable care in manufacturing the Subject Aromatherapy Product.

r.  Failing to inspect and test the foreign manufacturing facilities manufacturing the Subject Aromatherapy Product.

s.  Failing to identify and implement quality control mechanisms in the manufacturing process of the Subject Aromatherapy Product to ensure that the product would not become contaminated with deadly bacteria.

t.  Failing to inspect and test the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

327.    As a direct and proximate result of Defendant's negligence, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

328.    Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

329.    Defendant's negligent acts and omissions were also reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

**D. <u>Breach of Implied Warranties</u>**

330.    All prior allegations are hereby incorporated by reference.

331.    The defective and dangerous condition of the Subject Aromatherapy Product and lack of adequate warnings made it unfit for use generally and for the particular purpose of an aromatherapy product.

332.    Plaintiffs are hereby providing the requisite notice, as they have recently become aware of facts that would show that this Defendant breached a warranty and caused damages to Plaintiffs.

333.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of the Defendants. However, even if the subject elevator had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by Defendant.

334.    Wyatt Gibson is a third party who would foreseeably use and/or be affected by the Subject Aromatherapy Product.

335.    The Arkansas Code Annotated implies warranties of merchantability and fitness for a particular purpose in the sale (§§ 4-2-314, 4-2-315) and leasing (§§ 4-2A-212, 4-2A-213) of goods, including the Subject Aromatherapy Product like the one that is the subject of this Complaint.

336.    Defendants breached those implied warranties by selling a defective aromatherapy

product that violated the warranties of merchantability and fitness for a particular purpose.

337.    As a direct and proximate result of the Defendants' breach of warranties and pursuant to § 4-2-715 and § 4-2A-520, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages. Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

338.    Defendant's breach of warranties was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

## V.    DEFENDANT METCALFE

### A.  Products Liability – Strict Liability

339.    All prior allegations are hereby incorporated by reference.

340.    Defendant designed, manufactured, assembled, supplied, sold, marketed, labeled, distributed, and placed into the stream of commerce a defective and unreasonably dangerous product, *i.e.* the Subject Aromatherapy Product and/or its component parts.

341.    The Subject Aromatherapy Product suffered from a manufacturing defect in that the product materially deviated from product specifications, as the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or left this Defendant's control. This rendered the product unreasonably dangerous.

342. The Subject Aromatherapy Product was defective in manufacture in that it differed from the intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacterium not intended or found in other units of the same product.

343. The Subject Aromatherapy Product was expected to reach and did reach consumers without substantial change in the condition in which it was sold and was, at the time of this incident, in essentially the same condition as when it left the hands of this Defendant.

344. The Subject Aromatherapy Product was defective because its design, manufacture, and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, encounter consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

345. The Subject Aromatherapy Product was defective in that its design allowed it to become contaminated with the rare and deadly bacterium, *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

346. The Subject Aromatherapy Product, as designed and manufactured by this Defendant, was otherwise defective.

347. The Subject Aromatherapy Product was defective in design and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design or formulation.

348. The Subject Aromatherapy Product was defective in design in that its use posed greater likelihood of injury than other alternative designs.

349. The Subject Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by this Defendant.

350.    At the time the Subject Aromatherapy Product left this Defendant's possession, the Subject Aromatherapy Product was defective, and its condition made it unreasonably dangerous to Plaintiffs, including Wyatt G. Gibson, deceased. The Subject Aromatherapy Product was defective in that its design and manufacture allowed bacterium including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, come into contact with consumers like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

351.    Defendant intended for the Subject Aromatherapy Product to be used as a household and/or consumer product, as it was by Plaintiffs.

352.    Defendant knew or should have known that the Subject Aromatherapy Product would be used as a household and/or consumer product, as it was by Plaintiffs.

353.    The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household and/or consumer product.

354.    The Subject Aromatherapy Product was defective and unreasonably dangerous in that its condition was dangerous beyond that which would be contemplated by the ordinary and reasonable buyer and/or end product user.

355.    At all times relevant, neither Plaintiffs nor Wyatt G. Gibson, deceased, could have discovered the unreasonably dangerous nature of the Subject Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Aromatherapy Product. Thus, the unreasonably dangerous condition of the Subject Aromatherapy Product was unknowable to Plaintiffs and Wyatt G. Gibson, deceased.

356. The Subject Aromatherapy Product, as designed and manufactured, transmitted bacterium, including *Burkholderia pseudomallei*, directly to consumers during routine household and/or consumer use, including Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

357. The foreseeable risks of transmitting bacterium to consumers during household and/or consumer use, including Wyatt G. Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject Aromatherapy Product that is not defective.

358. The foreseeable risks of harm posed by the Subject Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable alternative design by this Defendant, and the omission of an alternative design renders the Subject Aromatherapy Product not reasonably safe for its intended use.

359. Plaintiffs and Wyatt G. Gibson, deceased, had a reasonable expectation that the Subject Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt G. Gibson, deceased, to develop a deadly infection.

360. The Subject Aromatherapy Product used by Plaintiffs as a household and/or consumer product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

361. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Aromatherapy Product, Wyatt Gibson was infected with *Burkholderia pseudomallei*, developed melioidosis, suffered significant injuries, and died an untimely death. Plaintiffs are entitled to recover for the injuries and damages set forth herein.

362.    Pursuant to Arkansas Code Ann. § 16-116-101, this Defendant is strictly liable for all damages proximately caused by the defective and unreasonably dangerous condition of the Subject Aromatherapy Product.

363.    The damages that Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages. Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

364.    Defendant's defective and unreasonably dangerous condition of the Subject Aromatherapy Product was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### B.  Failure to Warn/Instruct

365.    All prior allegations are hereby incorporated by reference.

366.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

367.    Defendant had a duty to provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, and all users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful

substances through inhalation, leakage, skin contact, or other means.

368.    Defendant breached this duty by failing to provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, distributors, and retailers, and all users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful substances through inhalation, leakage, skin contact, or other means.

369.    As a direct and proximate result of Defendant's failure to warn, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

370.    Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

371.    Defendant's failure to warn users and consumers of a known and serious risk of harm from using the product was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

## C.  Negligence

372.    All prior allegations are hereby incorporated by reference.

373.    Defendant had a duty to properly and safely design, test, assemble, market, manufacture, maintain, supply, import, distribute, warn, and inspect the Subject Aromatherapy Product and a duty to place a reasonably safe aromatherapy product in the stream of commerce.

374.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of

the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

375.    This duty of reasonable care required this Defendant to ensure that the product was in full compliance with industry regulations and standards and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

376.    Defendant breached this duty of care by designing, testing, assembling, manufacturing, importing, marketing, and distributing the Subject Aromatherapy Product in a manner that made the product defective and unreasonably dangerous for its intended and foreseeable use. This defect stems from the Subject Aromatherapy Product's propensity to permit the colonization and growth of bacterium and the ability of said bacteria to reach the ordinary consumer through aerosolization, fluid leakage, and other means.

377.    Defendant further breached its duty of care by allowing the Subject Aromatherapy Product to become contaminated with *Burkholderia pseudomallei* and then sold to the end-user without being properly disinfected.

378.    Defendant knew or reasonably should have known that the Subject Aromatherapy Product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

379.    Defendant knew or reasonably should have known that consumers of the Subject Aromatherapy Product would not realize the danger of potential transmission of deadly bacterium.

380.     Defendant owed Plaintiffs and Wyatt Gibson, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn importers, distributors, retailers, and consumers, including Plaintiffs and Wyatt Gibson, deceased, about these defects.

381.     Defendant failed to properly and timely warn importers, distributors, retailers and Plaintiffs and Wyatt Gibson, deceased, about these defects, thereby breaching its duty of care.

382.     Defendant owed Plaintiffs and Wyatt Gibson, deceased, a duty of reasonable care to follow good design, manufacturing, assembling, and distributing processes to prevent the Subject Aromatherapy Product from becoming contaminated with deadly bacteria.

383.     Defendant breached its duty by failing to follow good design, manufacturing, assembling, and distributing processes to prevent its products from becoming contaminated with deadly bacterium.

384.     Defendant had a duty to act as a prudent supplier of a consumer product meant for human exposure, including properly test the Subject Aromatherapy Product to ensure harmful bacteria were not present.

385.     Defendant had a duty to understand the product specifications and designs of the Subject Aromatherapy Product.

386.     Defendant had a duty to exercise reasonable care in manufacturing the Subject BHG Aromatherapy Product.

387.     Defendant had a duty to inspect, test, and manufacture the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

388.     Defendant had a duty to identify and implement quality control mechanisms in the manufacturing process of the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

389.    Defendant had a duty to inspect the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

390.    Defendant breached each of its duties in the following ways:

u.  Failing to fully understand its obligations as a manufacturer, distributor, and importer under the law.

v.  Failing to understand the product specifications and designs of the Subject Aromatherapy Product.

w.  Failing to exercise reasonable care in manufacturing the Subject Aromatherapy Product.

x.  Failing to inspect and test the foreign manufacturing facilities manufacturing the Subject Aromatherapy Product.

y.  Failing to identify and implement quality control mechanisms in the manufacturing process of the Subject Aromatherapy Product to ensure that the product would not become contaminated with deadly bacteria.

z.  Failing to inspect and test the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

391.    As a direct and proximate result of Defendant's negligence, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

392.    Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

393. Defendant's negligent acts and omissions were also reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

## VI. DEFENDANT GALA

### A. Products Liability – Strict Liability

394. All prior allegations are hereby incorporated by reference.

395. Defendant designed, manufactured, assembled, supplied, sold, marketed, labeled, distributed, and placed into the stream of commerce a defective and unreasonably dangerous product, *i.e.* the Subject Aromatherapy Product and/or its component parts.

396. The Subject Aromatherapy Product suffered from a manufacturing defect in that the product materially deviated from product specifications, as the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or left this Defendant's control. This rendered the product unreasonably dangerous.

397. The Subject Aromatherapy Product was defective in manufacture in that it differed from the intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacterium not intended or found in other units of the same product.

398. The Subject Aromatherapy Product was expected to reach and did reach consumers without substantial change in the condition in which it was sold and was, at the time of this incident, in essentially the same condition as when it left the hands of this Defendant.

399. The Subject Aromatherapy Product was defective because its design, manufacture, and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in

the device. Said bacteria could subsequently, and did, encounter consumers, like Wyatt G. Gibson, deceased, through aerosolization, fluid leakage, and other means.

400. The Subject Aromatherapy Product was defective in that its design allowed it to become contaminated with the rare and deadly bacterium, *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

401. The Subject Aromatherapy Product, as designed and manufactured by this Defendant, was otherwise defective.

402. The Subject Aromatherapy Product was defective in design and was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design or formulation.

403. The Subject Aromatherapy Product was defective in design in that its use posed greater likelihood of injury than other alternative designs.

404. The Subject Aromatherapy Product purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by this Defendant.

405. At the time the Subject Aromatherapy Product left this Defendant's possession, the Subject Aromatherapy Product was defective, and its condition made it unreasonably dangerous to Plaintiffs, including Wyatt Gibson, deceased. The Subject Aromatherapy Product was defective in that its design and manufacture allowed bacterium including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, come into contact with consumers like Wyatt Gibson, deceased, through aerosolization, fluid leakage, and other means.

406.    Defendant intended for the Subject Aromatherapy Product to be used as a household and/or consumer product, as it was by Plaintiffs.

407.    Defendant knew or should have known that the Subject Aromatherapy Product would be used as a household and/or consumer product, as it was by Plaintiffs.

408.    The Subject BHG Aromatherapy Product was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject BHG Aromatherapy Product would be used as a household and/or consumer product.

409.    The Subject Aromatherapy Product was defective and unreasonably dangerous in that its condition was dangerous beyond that which would be contemplated by the ordinary and reasonable buyer and/or end product user.

410.    At all times relevant, neither Plaintiffs nor Wyatt Gibson, deceased, could have discovered the unreasonably dangerous nature of the Subject Aromatherapy Product through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Aromatherapy Product. Thus, the unreasonably dangerous condition of the Subject Aromatherapy Product was unknowable to Plaintiffs and Wyatt Gibson, deceased.

411.    The Subject Aromatherapy Product, as designed and manufactured, transmitted bacterium, including *Burkholderia pseudomallei*, directly to consumers during routine household and/or consumer use, including Wyatt Gibson, deceased, through aerosolization, fluid leakage, and other means.

412.    The foreseeable risks of transmitting bacterium to consumers during household and/or consumer use, including Wyatt Gibson, deceased, far outweigh any utility of using the Subject BHG Aromatherapy Product. The foreseeable risks also far outweigh any cost of

designing, manufacturing, and producing an alternative design of the Subject Aromatherapy Product that is not defective.

413.    The foreseeable risks of harm posed by the Subject Aromatherapy Product could have been reduced or avoided by the adoption of a reasonable alternative design by this Defendant, and the omission of an alternative design renders the Subject Aromatherapy Product not reasonably safe for its intended use.

414.    Plaintiffs and Wyatt Gibson, deceased, had a reasonable expectation that the Subject Aromatherapy Product would not be unreasonably dangerous and defective, and that the product would not cause Wyatt Gibson, deceased, to develop a deadly infection.

415.    The Subject Aromatherapy Product used by Plaintiffs as a household and/or consumer product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

416.    As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Aromatherapy Product, Wyatt Gibson was infected with *Burkholderia pseudomallei*, developed melioidosis, suffered significant injuries, and died an untimely death. Plaintiffs are entitled to recover for the injuries and damages set forth herein.

417.    Pursuant to Arkansas Code Ann. § 16-116-101, this Defendant is strictly liable for all damages proximately caused by the defective and unreasonably dangerous condition of the Subject Aromatherapy Product.

418.    The damages that Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages. Plaintiffs suffered,

*inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

419.    Defendant's defective and unreasonably dangerous condition of the Subject Aromatherapy Product was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### B.  Failure to Warn/Instruct

420.    All prior allegations are hereby incorporated by reference.

421.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

422.    Defendant had a duty to provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, and all users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful substances through inhalation, leakage, skin contact, or other means.

423.    Defendant breached this duty by failing to provide adequate warnings and information to foreseeable users, such as Wyatt Gibson, his parents, distributors, and retailers, and all users of aromatherapy products, about the dangers of the Subject Aromatherapy Product, including its ability to expose consumers to harmful substances through inhalation, leakage, skin contact, or other means.

424.    As a direct and proximate result of Defendant's failure to warn, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

425.    Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

426.    Defendant's failure to warn users and consumers of a known and serious risk of harm from using the product was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

### C.  <u>Negligence</u>

427.    All prior allegations are hereby incorporated by reference.

428.    Defendant had a duty to properly and safely design, test, assemble, market, manufacture, maintain, supply, import, distribute, warn, and inspect the Subject Aromatherapy Product and a duty to place a reasonably safe aromatherapy product in the stream of commerce.

429.    The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of this Defendant. However, even if the Subject Aromatherapy Product had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by this Defendant.

430.    This duty of reasonable care required this Defendant to ensure that the product was in full compliance with industry regulations and standards and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

431.    Defendant breached this duty of care by designing, testing, assembling, manufacturing, importing, marketing, and distributing the Subject Aromatherapy Product in a manner that made the product defective and unreasonably dangerous for its intended and foreseeable use. This defect stems from the Subject Aromatherapy Product's propensity to permit the colonization and growth of bacterium and the ability of said bacteria to reach the ordinary consumer through aerosolization, fluid leakage, and other means.

432.    Defendant further breached its duty of care by allowing the Subject Aromatherapy Product to become contaminated with *Burkholderia pseudomallei* and then sold to the end-user without being properly disinfected.

433.    Defendant knew or reasonably should have known that the Subject Aromatherapy Product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

434.    Defendant knew or reasonably should have known that consumers of the Subject Aromatherapy Product would not realize the danger of potential transmission of deadly bacterium.

435.    Defendant owed Plaintiffs and Wyatt Gibson, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn importers, distributors, retailers, and consumers, including Plaintiffs and Wyatt Gibson, deceased, about these defects.

436.    Defendant failed to properly and timely warn importers, distributors, retailers and Plaintiffs and Wyatt Gibson, deceased, about these defects, thereby breaching its duty of care.

437.    Defendant owed Plaintiffs and Wyatt Gibson, deceased, a duty of reasonable care to follow good design, manufacturing, assembling, and distributing processes to prevent the Subject Aromatherapy Product from becoming contaminated with deadly bacteria.

438.    Defendant breached its duty by failing to follow good design, manufacturing, assembling, and distributing processes to prevent its products from becoming contaminated with deadly bacterium.

439.    Defendant had a duty to act as a prudent supplier of a consumer product meant for human exposure, including properly test the Subject Aromatherapy Product to ensure harmful bacteria were not present.

440.    Defendant had a duty to understand the product specifications and designs of the Subject Aromatherapy Product.

441.    Defendant had a duty to exercise reasonable care in manufacturing the Subject BHG Aromatherapy Product.

442.    Defendant had a duty to inspect, test, and manufacture the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

443.    Defendant had a duty to identify and implement quality control mechanisms in the manufacturing process of the Subject Aromatherapy Product to ensure that the product was safe for United States consumers.

444.    Defendant had a duty to inspect the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

445.    Defendant breached each of its duties in the following ways:

    aa. Failing to fully understand its obligations as a manufacturer, distributor, and importer under the law.

bb. Failing to understand the product specifications and designs of the Subject Aromatherapy Product.

cc. Failing to exercise reasonable care in manufacturing the Subject Aromatherapy Product.

dd. Failing to inspect and test the foreign manufacturing facilities manufacturing the Subject Aromatherapy Product.

ee. Failing to identify and implement quality control mechanisms in the manufacturing process of the Subject Aromatherapy Product to ensure that the product would not become contaminated with deadly bacteria.

ff. Failing to inspect and test the Subject Aromatherapy Product to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

446.    As a direct and proximate result of Defendant's negligence, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

447.    Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

448.    Defendant's negligent acts and omissions were also reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

D. **Breach of Implied Warranties**

449.    All prior allegations are hereby incorporated by reference.

450.     The defective and dangerous condition of the Subject Aromatherapy Product and lack of adequate warnings made it unfit for use generally and for the particular purpose of an aromatherapy product.

451.     Plaintiffs are hereby providing the requisite notice, as they have recently become aware of facts that would show that this Defendant breached a warranty and caused damages to Plaintiffs.

452.     The Subject Aromatherapy Product was expected to, and did, reach the user and/or consumer without substantial change in the condition in which it was sold and was, at the time of the subject incident, in essentially the same condition as when it left the hands of the Defendants. However, even if the subject elevator had been altered in some fashion before causing injury and death to Wyatt Gibson, any such alteration(s) is well-known and foreseeable by Defendant.

453.     Wyatt Gibson is a third party who would foreseeably use and/or be affected by the Subject Aromatherapy Product.

454.     The Arkansas Code Annotated implies warranties of merchantability and fitness for a particular purpose in the sale (§§ 4-2-314, 4-2-315) and leasing (§§ 4-2A-212, 4-2A-213) of goods, including the Subject Aromatherapy Product like the one that is the subject of this Complaint.

455.     Defendants breached those implied warranties by selling a defective aromatherapy product that violated the warranties of merchantability and fitness for a particular purpose.

456.     As a direct and proximate result of the Defendants' breach of warranties and pursuant to § 4-2-715 and § 4-2A-520, Wyatt Gibson suffered, *inter alia*, severe and permanent injuries; past, present, and future lost wages and loss of earning capacity; conscious physical and emotional pain, suffering and mental and anguish; past medical costs; and other damages.

Plaintiffs suffered, *inter alia*, pecuniary injuries; past, present, and future significant mental anguish; and other damages.

457.    Defendant's breach of warranties was reckless, willful, wanton, heedless, and in flagrant disregard for public safety. As a result, Plaintiffs are entitled to recover punitive and/or exemplary damages in an amount to be determined by the trier of fact.

## CAUSATION AND DAMAGES

458.    The acts and omissions by each respective Defendant described above, and the product defects described above, were a proximate cause of Wyatt's injuries, suffering, death, and the damages sought herein.

459.    As a result of each Defendant's respective negligent acts and omissions and the product defects described herein, Wyatt suffered severe personal injuries resulting in death. Defendants are each liable for compensatory damages arising from their negligence and from their respective product's defects. Such damages include but are not necessarily limited to those described below.

460.    Plaintiffs have incurred damages as wrongful death beneficiaries, including but not limited to:

      a. Past mental anguish in the form of emotional pain, torment, and suffering experienced only by one who has suffered the loss of a child;

      b. Future mental anguish in the form of emotional pain, torment, and suffering experienced only by one who has suffered the loss of a child;

      c. Past physical pain of the deceased and the statutory beneficiary;

      d. Future physical pain of the statutory beneficiary;

      e. Past medical/funeral expenses; and

f.  Loss of a child's love, guidance, and support.

461.    In addition, Plaintiff Leah Freeman Alexis Gibson, as ancillary representative of the estate of Wyatt Gibson, and all wrongful death beneficiaries, pursuant to A.C.A. § 16-62-102, claim damages for the following on behalf of the Deceased:

g.  Pre-death fright;

h.  Fear of death;

i.  Pre-death pain, either emotionally and/or physically:

j.  Funeral and burial expenses;

k.  Loss of earnings by Wyatt Gibson;

l.  Physical and mental impairment;

m.  Physical and mental pain and suffering;

n.  Loss of care, comfort, and guidance; and,

o.  Loss of life.

462.    Plaintiffs reserve the right to plead additional and more specific damages in the future as more facts become known.  Plaintiffs seek both past and future damages. Damages far exceed the minimum jurisdictional limits of this Court.

## **PUNITIVE DAMAGES**

463.    All prior allegations are hereby incorporated by reference.

464.    Plaintiffs are entitled to recover punitive damages in accordance with Arkansas law, based upon the Defendants' complete indifference to and conscious disregard for the safety of Wyatt Gibson and others, causing or contributing to his catastrophic injuries and death. Defendants' wanton and reckless acts and omissions occurred under circumstances where their conduct, in total disregard of the consequences, would naturally and probably result in injury or

damages to Wyatt Gibson.

465. Defendants knew or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in catastrophic and serious injury, and continued this conduct with malice and wanton and reckless disregard for the consequences of its actions for which punitive damages should be awarded.

466. In addition to actual, special, consequential and compensatory damages, Plaintiffs demand a judgment against Defendants for punitive damages in an amount necessary and sufficient to deter Defendants from the above described conduct and to punish Defendants for their willful, wanton, gross, flagrant, reckless, outrageous, and egregious conduct.

467. Plaintiffs hereby designate, in accordance with Ark. Code Ann. § 16-56-125, John Does 1-10, both for the purpose of tolling the statute of limitations against all such unknown defendants or tortfeasors as described hereinabove and for purposes of discovery.

468. Plaintiffs have made reasonable inquiry to determine the names of all potential defendants and tortfeasors herein, and Plaintiffs will amend their complaint, if necessary, and in accordance with § 16-56-125, to specifically include the names of any unknown individuals or entities as proper defendants at such time as they are ascertained or identified, whether through discovery or otherwise. In accordance with § 16-56-125, a supporting Affidavit is attached hereto as "Exhibit "B.""

## DEMAND FOR JURY TRIAL

469. Plaintiffs request this matter be tried before a jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Alexis Leah Freeman Gibsonas Ancillary Representative of the Estate of Wyatt Gibson, and on behalf of all wrongful death beneficiaries, prays for judgement over and against the Defendants for compensatory and punitive

damages; for interest and costs herein, and for any and all other just and proper relief Plaintiffs may show themselves entitled.

Respectfully submitted,

*/s/ Bill D. Reynolds*

By: Bill D. Reynolds, ABA #92021
Caddell | Reynolds, P.A.
P.O. Box 184
Fort Smith, AR 72902
Tel: (479) 782-5297
Fax: (479) 782-5184
breynolds@caddellreynolds.com
***Attorney for the Plaintiffs***

PLAINTIFFS DEMAND TRIAL BY JURY

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

ALEXIS LEAH FREEMAN GIBSON as
Ancillary Personal Representative of the
ESTATE OF WYATT GARY GIBSON,
Deceased and ALL WRONGFUL DEATH
BENEFICIARIES                                                          PLAINTIFFS

Vs.                              CASE NO. _____

CONSUMER TESTING LABORATORIES, INC.,
UL VERIFICATION SERVICES, INC.,
EARTHBOUND LICENSING, LLC,
EARTHBOUND, LLC, EARTHBOUND PW
LLC, ROBERT BURGESS d/b/a BURGESS
GROUP a/k/a BOB BURGESS AND ASSOCIATES,
MELISSA METCALFE, MANE USA, INC.,
GALA NORTH AMERICA, INC., and
JOHN DOES 1-10                                                        DEFEDANTS

**AFFIDAVIT**

I, Bill D. Reynolds, testify as follows from my own personal knowledge:

1.      My name is Bill D. Reynolds, Arkansas Bar Identification Number 92021, and I am an attorney of record for Plaintiff Alexis Leah Freeman Gibson, as ancillary personal representative of the Estate of Wyatt Gary Gibson, deceased, and all wrongful death beneficiaries, in the above-captioned matter.

2.      I have caused a complaint to be filed on behalf of Alexis Leah Freeman Gibson, as ancillary personal representative of the Estate of Wyatt Gary Gibson, deceased, and on behalf of all wrongful death beneficiaries alleging wrongful death.

3.      I hereby swear or affirm that the identities of some of the potential defendants and particular tortfeasors remain unknown to Plaintiffs at this time, and Plaintiffs have designated, in accordance with Ark. Code Ann. § 16-56-125, such unknown defendants and tortfeasors as John Does 1 through John Does 10, for the purpose of tolling the statute of limitations against all such unknown defendants and tortfeasors and for purposes of discovery.

4.      The unknown defendants and tortfeasors in question are defined as those persons or entities for which liability may be attributed during the course of discovery for having caused,

or for which legal liability may be assessed, pursuant to any legal or equitable theory allowed by Arkansas law, the injuries and damages to Wyatt Gary Gibson and Plaintiffs as specifically alleged, described, and identified in Plaintiffs' Complaint in this matter.

5.      Plaintiffs have made reasonable inquiry in order to determine the names of all potential defendants and tortfeasors, and Plaintiffs will amend the Complaint, in accordance with Ark. Code Ann. § 16-56-125, to include the names of any unknown defendants and tortfeasors at such time as the same are ascertained, whether through discovery or otherwise. Upon determining the identity or identities of the unknown defendants or tortfeasors, the pseudo names of the John Doe defendants will be replaced with the real names of the defendants in the complaint.

FURTHER AFFIANT SAYETH NOT.

Bill D. Reynolds, ABA# 92021

State of Arkansas

County of Washington

Subscribed and sworn before me on this 12th day of July, 2023.

Notary Public

11/7/2028
My Commission Expires

JESSICA CORDERMAN
MY COMMISSION # 12706279
EXPIRES: November 7, 2028
Sebastian County

**SUMMONS**

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

**ALEXIS LEAH FREEMAN GIBSON as**
**Ancillary Personal Representative of the**
**ESTATE OF WYATT GARY GIBSON,**
**Deceased and ALL WRONGFUL DEATH**
**BENEFICIARIES**                                                            **PLAINTIFFS**

**vs.**                          **CASE NO.** _____

**CONSUMER TESTING LABORATORIES, INC.,**
**UL VERIFICATION SERVICES, INC.,**
**EARTHBOUND LICENSING, LLC,**
**EARTHBOUND, LLC, EARTHBOUND PW**
**LLC, ROBERT BURGESS d/b/a BURGESS**
**GROUP a/k/a BOB BURGESS AND ASSOCIATES,**
**MELISSA METCALFE, MANE USA, INC.,**
**GALA NORTH AMERICA, INC., and**
**JOHN DOES 1-10**                                                           **DEFEDANTS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

> UL VERIFRICATION SERVICES, INC.
> c/o CT Corporation System
> 124 West Capitol Ave., Suite 1900
> Little Rock, AR  72201

A lawsuit has been filed against you.  The relief is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill D. Reynolds
CADDELL REYNOLDS, P.A.
P.O. Box 184
Fort Smith, AR  72902

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint

 **Additional Notices:  None.**

**WITNESS MY HAND AND SEAL OF THE COURT this 12th day of July, 2023.**

Brenda DeShields
BENTON COUNTY CIRCUIT CLERK
102 NE A St.
Bentonville, AR  72712

BY:    (electronically signed)_____
Deputy Clerk

No._____ This summons is for Defendant UL VERIFRICATION SERVICES, INC.


**PROOF OF SERVICE**

(  ) On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place];or

(  ) I left the Summons, Complaint, and additional notices specified on the Summons (if applicable) in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her, on _____ [date]; or

(  ) After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____[describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

(  ) On _____[date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

(  ) On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

(  ) On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

(  ) I am the plaintiff or an attorney of records for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

(  ) I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgement and received the attached notice and acknowledgment form within twenty days after the date of mailing.

(  ) Other: _____ [specify]

(  ) I was unable to execute service because: _____

_____.

My fee is $_____

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of Server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
[Signature of Server]

_____
[Printed Name]

Address:_____
_____

Phone: _____

Subscribed and sworn to before me, the undersigned Notary Public, on this ____ day of _____, 20__.

_____
Notary Public

My Commission Expires:

_____

Additional information regarding service or attempted service:

_____

_____



**Case Title:**     GIBSON ETAL V CONSUMER TESTING LABORATORIES INC

**Case Number:**     04CV-23-1831

**Type:**     SUMMONS - FILER PREPARED

So Ordered

Maria E Delgado, Benton County Deputy Clerk

Electronically signed by MEDELGADO on 2023-07-13 09:12:10    page 4 of 4

**SUMMONS**

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

ALEXIS LEAH FREEMAN GIBSON as
Ancillary Personal Representative of the
ESTATE OF WYATT GARY GIBSON,
Deceased and ALL WRONGFUL DEATH
BENEFICIARIES                                                          **PLAINTIFFS**

vs.                          CASE NO. _____

CONSUMER TESTING LABORATORIES, INC.,
UL VERIFICATION SERVICES, INC.,
EARTHBOUND LICENSING, LLC,
EARTHBOUND, LLC, EARTHBOUND PW
LLC, ROBERT BURGESS d/b/a BURGESS
GROUP a/k/a BOB BURGESS AND ASSOCIATES,
MELISSA METCALFE, MANE USA, INC.,
GALA NORTH AMERICA, INC., and
JOHN DOES 1-10                                                        **DEFEDANTS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

CONSUMER TESTING LABORATORIES, INC.
c/o Aamer Khan
2601 SE Otis Corler Drive
Bentonville, AR  72712

A lawsuit has been filed against you.  The relief is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill D. Reynolds
CADDELL REYNOLDS, P.A.
P.O. Box 184
Fort Smith, AR  72902

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint

 **Additional Notices:  None.**

       **WITNESS MY HAND AND SEAL OF THE COURT this 12th day of July, 2023.**

Brenda DeShields
BENTON COUNTY CIRCUIT CLERK
102 NE A St.
Bentonville, AR  72712


BY:   __(electronically signed)_____
Deputy Clerk

No._____ This summons is for Defendant CONSUMER TESTING LABORATORIES, INC.


## PROOF OF SERVICE

( ) On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place];or

( ) I left the Summons, Complaint, and additional notices specified on the Summons (if applicable) in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her, on _____ [date]; or

( ) After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____[describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

( ) On _____[date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

( ) On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

( ) On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

( ) I am the plaintiff or an attorney of records for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

( ) I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgement and received the attached notice and acknowledgment form within twenty days after the date of mailing.

( ) Other: _____ [specify]

(  ) I was unable to execute service because: _____

_____.

My fee is $_____

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
    [Signature of Server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                                   [Signature of Server]


_____
[Printed Name]

Address:_____

_____

Phone: _____

Subscribed and sworn to before me, the undersigned Notary Public, on this _____ day of _____, 20__.

_____
Notary Public

My Commission Expires:

_____

Additional information regarding service or attempted service:

_____

_____



**Case Title:**     GIBSON ETAL V CONSUMER TESTING LABORATORIES INC

**Case Number:**    04CV-23-1831

**Type:**           SUMMONS - FILER PREPARED


So Ordered

Maria E Delgado, Benton County Deputy Clerk


Electronically signed by MEDELGADO on 2023-07-13 09:12:20     page 4 of 4

**SUMMONS**

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

**ALEXIS LEAH FREEMAN GIBSON as**
**Ancillary Personal Representative of the**
**ESTATE OF WYATT GARY GIBSON,**
**Deceased and ALL WRONGFUL DEATH**
**BENEFICIARIES**                                                    **PLAINTIFFS**

**vs.**                            **CASE NO.** _____

**CONSUMER TESTING LABORATORIES, INC.,**
**UL VERIFICATION SERVICES, INC.,**
**EARTHBOUND LICENSING, LLC,**
**EARTHBOUND, LLC, EARTHBOUND PW**
**LLC, ROBERT BURGESS d/b/a BURGESS**
**GROUP a/k/a BOB BURGESS AND ASSOCIATES,**
**MELISSA METCALFE, MANE USA, INC.,**
**GALA NORTH AMERICA, INC., and**
**JOHN DOES 1-10**                                                  **DEFEDANTS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

> EARTHBOUND, LLC
> c/o The Corporation Trust Company
> Corporation Trust Center
> 1209 Orange Street
> Wilmington, DE  19801

A lawsuit has been filed against you.  The relief is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill D. Reynolds
CADDELL REYNOLDS, P.A.
P.O. Box 184
Fort Smith, AR  72902

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint

 **Additional Notices:  None.**

        **WITNESS MY HAND AND SEAL OF THE COURT this 12th day of July, 2023.**

Brenda DeShields
BENTON COUNTY CIRCUIT CLERK
102 NE A St.
Bentonville, AR  72712

BY: __(electronically signed)_____
Deputy Clerk

No._____ This summons is for Defendant EARTHBOUND, LLC

### **PROOF OF SERVICE**

(  ) On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place];or

(  ) I left the Summons, Complaint, and additional notices specified on the Summons (if applicable) in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her, on _____ [date]; or

(  ) After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____[describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

(  ) On _____[date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

(  ) On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

(  ) On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

(  ) I am the plaintiff or an attorney of records for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

(  ) I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgement and received the attached notice and acknowledgment form within twenty days after the date of mailing.

(  ) Other: _____ [specify]

(  ) I was unable to execute service because: _____

_____.

My fee is $_____

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of Server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
[Signature of Server]

_____
[Printed Name]

Address:_____
_____

Phone: _____

Subscribed and sworn to before me, the undersigned Notary Public, on this _____ day of _____, 20__.

_____
Notary Public

My Commission Expires:
_____

Additional information regarding service or attempted service:

_____

_____



**Case Title:**     GIBSON ETAL V CONSUMER TESTING LABORATORIES INC

**Case Number:**    04CV-23-1831

**Type:**           SUMMONS - FILER PREPARED


So Ordered

Maria E Delgado, Benton County Deputy Clerk


Electronically signed by MEDELGADO on 2023-07-13 09:12:31     page 4 of 4

**SUMMONS**

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

**ALEXIS LEAH FREEMAN GIBSON as**
**Ancillary Personal Representative of the**
**ESTATE OF WYATT GARY GIBSON,**
**Deceased and ALL WRONGFUL DEATH**
**BENEFICIARIES**                                                           **PLAINTIFFS**

**vs.**                              **CASE NO.** _____

**CONSUMER TESTING LABORATORIES, INC.,**
**UL VERIFICATION SERVICES, INC.,**
**EARTHBOUND LICENSING, LLC,**
**EARTHBOUND, LLC, EARTHBOUND PW**
**LLC, ROBERT BURGESS d/b/a BURGESS**
**GROUP a/k/a BOB BURGESS AND ASSOCIATES,**
**MELISSA METCALFE, MANE USA, INC.,**
**GALA NORTH AMERICA, INC., and**
**JOHN DOES 1-10**                                                          **DEFEDANTS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

> EARTHBOUND LICENSING, LLC
> c/o National Registered Agents, Inc.
> 124 West Capitol Ave., Suite 1900
> Little Rock, AR  72201

A lawsuit has been filed against you.  The relief is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill D. Reynolds
CADDELL REYNOLDS, P.A.
P.O. Box 184
Fort Smith, AR  72902

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint

 Additional Notices:  None.

        **WITNESS MY HAND AND SEAL OF THE COURT this 12th day of July, 2023.**

Brenda DeShields
BENTON COUNTY CIRCUIT CLERK
102 NE A ST.
Bentonville, AR  72712

BY:   (electronically signed)_____
Deputy Clerk

No._____   This summons is for Defendant EARTHBOUND LICENSING, LLC

### PROOF OF SERVICE

( ) On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place];or

( ) I left the Summons, Complaint, and additional notices specified on the Summons (if applicable) in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her, on _____ [date]; or

( ) After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____[describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

( ) On _____[date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

( ) On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

( ) On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

( ) I am the plaintiff or an attorney of records for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

( ) I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgement and received the attached notice and acknowledgment form within twenty days after the date of mailing.

( ) Other: _____ [specify]

( ) I was unable to execute service because: _____

_____.

My fee is $_____

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of Server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____        By: _____
[Signature of Server]

_____
[Printed Name]

Address:_____

_____

Phone: _____

Subscribed and sworn to before me, the undersigned Notary Public, on this ____ day of _____, 20__.

_____
Notary Public

My Commission Expires:

_____

Additional information regarding service or attempted service:

_____

_____



**Case Title:**     GIBSON ETAL V CONSUMER TESTING LABORATORIES INC

**Case Number:**    04CV-23-1831

**Type:**       SUMMONS - FILER PREPARED

So Ordered

Maria E Delgado, Benton County Deputy Clerk

Electronically signed by MEDELGADO on 2023-07-13 09:12:32     page 4 of 4

**SUMMONS**

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

**ALEXIS LEAH FREEMAN GIBSON as**
**Ancillary Personal Representative of the**
**ESTATE OF WYATT GARY GIBSON,**
**Deceased and ALL WRONGFUL DEATH**
**BENEFICIARIES**                                             **PLAINTIFFS**

**vs.**                    **CASE NO.** _____

**CONSUMER TESTING LABORATORIES, INC.,**
**UL VERIFICATION SERVICES, INC.,**
**EARTHBOUND LICENSING, LLC,**
**EARTHBOUND, LLC, EARTHBOUND PW**
**LLC, ROBERT BURGESS d/b/a BURGESS**
**GROUP a/k/a BOB BURGESS AND ASSOCIATES,**
**MELISSA METCALFE, MANE USA, INC.,**
**GALA NORTH AMERICA, INC., and**
**JOHN DOES 1-10**                                           **DEFEDANTS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

>    EARTHBOUND PW, LLC
>    c/o National Registered Agents, Inc.
>    124 West Capitol Ave., Suite 1900
>    Little Rock, AR  72201

A lawsuit has been filed against you.  The relief is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill D. Reynolds
CADDELL REYNOLDS, P.A.
P.O. Box 184
Fort Smith, AR  72902

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint

 **Additional Notices:  None.**

        **WITNESS MY HAND AND SEAL OF THE COURT this 12th day of July, 2023.**

Brenda DeShields
BENTON COUNTY CIRCUIT CLERK
102 NE A St.
Bentonville, AR  72712

BY:   (electronically signed)_____
Deputy Clerk

No._____   This summons is for Defendant EARTHBOUND PW, LLC


**<u>PROOF OF SERVICE</u>**

( ) On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place];or

( ) I left the Summons, Complaint, and additional notices specified on the Summons (if applicable) in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her, on _____ [date]; or

( ) After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____[describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

( ) On _____[date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

( ) On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

( ) On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

( ) I am the plaintiff or an attorney of records for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

( ) I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgement and received the attached notice and acknowledgment form within twenty days after the date of mailing.

( ) Other: _____ [specify]

( ) I was unable to execute service because: _____

_____.

My fee is $_____

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
          [Signature of Server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
          [Signature of Server]

_____
[Printed Name]

Address:_____
          _____

Phone: _____

Subscribed and sworn to before me, the undersigned Notary Public, on this ____ day of _____, 20__.

_____
Notary Public

My Commission Expires:

_____

Additional information regarding service or attempted service:

_____

_____



**Case Title:**       GIBSON ETAL V CONSUMER TESTING LABORATORIES INC

**Case Number:**    04CV-23-1831

**Type:**             SUMMONS - FILER PREPARED


So Ordered

Maria E Delgado, Benton County Deputy Clerk


Electronically signed by MEDELGADO on 2023-07-13 09:12:40     page 4 of 4

**SUMMONS**

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

**ALEXIS LEAH FREEMAN GIBSON as**
**Ancillary Personal Representative of the**
**ESTATE OF WYATT GARY GIBSON,**
**Deceased and ALL WRONGFUL DEATH**
**BENEFICIARIES**                                                                    **PLAINTIFFS**


**vs.**                               **CASE NO.** _____


**CONSUMER TESTING LABORATORIES, INC.,**
**UL VERIFICATION SERVICES, INC.,**
**EARTHBOUND LICENSING, LLC,**
**EARTHBOUND, LLC, EARTHBOUND PW**
**LLC, ROBERT BURGESS d/b/a BURGESS**
**GROUP a/k/a BOB BURGESS AND ASSOCIATES,**
**MELISSA METCALFE, MANE USA, INC.,**
**GALA NORTH AMERICA, INC., and**
**JOHN DOES 1-10**                                                                   **DEFEDANTS**


**THE STATE OF ARKANSAS TO DEFENDANT:**

GALA NORTH AMERICA, INC.
c/o Paul G.Klockenbrink
Gentry Locke
10 Franklin Rd. SE, Suite 900
Roanoke, VA  24011

A lawsuit has been filed against you.  The relief is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill D. Reynolds
CADDELL REYNOLDS, P.A.
P.O. Box 184
Fort Smith, AR  72902

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint

 **Additional Notices:  None.**

        **WITNESS MY HAND AND SEAL OF THE COURT this 12th day of July, 2023.**

Brenda DeShields
BENTON COUNTY CIRCUIT CLERK
102 NE A St.
Bentonville, AR  72712

BY:    (electronically signed)
Deputy Clerk

No._____ This summons is for Defendant GALA NORTH AMERICA, INC.

## PROOF OF SERVICE

(  ) On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place];or

(  ) I left the Summons, Complaint, and additional notices specified on the Summons (if applicable) in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her, on _____ [date]; or

(  ) After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____[describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

(  ) On _____[date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

(  ) On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

(  ) On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

(  ) I am the plaintiff or an attorney of records for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

(  ) I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgement and received the attached notice and acknowledgment form within twenty days after the date of mailing.

(  ) Other: _____ [specify]

(  ) I was unable to execute service because: _____

_____.

My fee is $_____

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____  SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
   [Signature of Server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____  By: _____
   [Signature of Server]

_____
[Printed Name]

Address:_____

   _____

Phone: _____

Subscribed and sworn to before me, the undersigned Notary Public, on this _____ day of _____, 20__.

_____
Notary Public

My Commission Expires:

_____

Additional information regarding service or attempted service:

_____

_____



**Case Title:**     GIBSON ETAL V CONSUMER TESTING LABORATORIES INC

**Case Number:**    04CV-23-1831

**Type:**       SUMMONS - FILER PREPARED

So Ordered

Maria E Delgado, Benton County Deputy Clerk

Electronically signed by MEDELGADO on 2023-07-13 09:12:50    page 4 of 4

**SUMMONS**

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

ALEXIS LEAH FREEMAN GIBSON as
Ancillary Personal Representative of the
ESTATE OF WYATT GARY GIBSON,
Deceased and ALL WRONGFUL DEATH
BENEFICIARIES                                                                    PLAINTIFFS

vs.                               CASE NO. _____

CONSUMER TESTING LABORATORIES, INC.,
UL VERIFICATION SERVICES, INC.,
EARTHBOUND LICENSING, LLC,
EARTHBOUND, LLC, EARTHBOUND PW
LLC, ROBERT BURGESS d/b/a BURGESS
GROUP a/k/a BOB BURGESS AND ASSOCIATES,
MELISSA METCALFE, MANE USA, INC.,
GALA NORTH AMERICA, INC., and
JOHN DOES 1-10                                                                  DEFEDANTS

THE STATE OF ARKANSAS TO DEFENDANT:

    MANE USA, INC.
    c/o Corporation Service Company
    Princeton South Corporate Center, Suite 160
    100 Charles Ewing Blvd.
    Ewing, NJ  08628

A lawsuit has been filed against you.  The relief is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill D. Reynolds
CADDELL REYNOLDS, P.A.
P.O. Box 184
Fort Smith, AR  72902

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint

 **Additional Notices:  None.**

     **WITNESS MY HAND AND SEAL OF THE COURT this 12th day of July, 2023.**

Brenda DeShields
BENTON COUNTY CIRCUIT CLERK
102 NE A St.
Bentonville, AR  72712

BY:   __(electronically signed)_____
      Deputy Clerk

No._____ This summons is for Defendant MANE USA, INC.

## **PROOF OF SERVICE**

(  ) On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place];or

(  ) I left the Summons, Complaint, and additional notices specified on the Summons (if applicable) in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her, on _____ [date]; or

(  ) After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____[describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

(  ) On _____[date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

(  ) On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

(  ) On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

(  ) I am the plaintiff or an attorney of records for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

(  ) I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgement and received the attached notice and acknowledgment form within twenty days after the date of mailing.

(  ) Other: _____ [specify]

(  ) I was unable to execute service because: _____

_____.

My fee is $_____

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of Server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
[Signature of Server]

_____
[Printed Name]

Address:_____
    _____

Phone: _____

Subscribed and sworn to before me, the undersigned Notary Public, on this _____ day of _____, 20__.

_____
Notary Public

My Commission Expires:

_____

Additional information regarding service or attempted service:

_____

_____



**Case Title:**     GIBSON ETAL V CONSUMER TESTING LABORATORIES INC

**Case Number:**   04CV-23-1831

**Type:**          SUMMONS - FILER PREPARED


So Ordered

Maria E Delgado, Benton County Deputy Clerk


Electronically signed by MEDELGADO on 2023-07-13 09:12:51     page 4 of 4

**SUMMONS**

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

**ALEXIS LEAH FREEMAN GIBSON as**
**Ancillary Personal Representative of the**
**ESTATE OF WYATT GARY GIBSON,**
**Deceased and ALL WRONGFUL DEATH**
**BENEFICIARIES**                                                          **PLAINTIFFS**

**vs.**                          **CASE NO.** _____

**CONSUMER TESTING LABORATORIES, INC.,**
**UL VERIFICATION SERVICES, INC.,**
**EARTHBOUND LICENSING, LLC,**
**EARTHBOUND, LLC, EARTHBOUND PW**
**LLC, ROBERT BURGESS d/b/a BURGESS**
**GROUP a/k/a BOB BURGESS AND ASSOCIATES,**
**MELISSA METCALFE, MANE USA, INC.,**
**GALA NORTH AMERICA, INC., and**
**JOHN DOES 1-10**                                                        **DEFEDANTS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

MELISSA METCALFE
404 SW Countrywood Rd.
Bentonville, AR  72712

A lawsuit has been filed against you.  The relief is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill D. Reynolds
CADDELL REYNOLDS, P.A.
P.O. Box 184
Fort Smith, AR  72902

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint

 **Additional Notices:  None.**

        **WITNESS MY HAND AND SEAL OF THE COURT this 12th day of July, 2023.**

Brenda DeShields
BENTON COUNTY CIRCUIT CLERK
102 NE A St.
Bentonville, AR  72712


BY:    (electronically signed)_____
Deputy Clerk

No._____    This summons is for Defendant MELISSA METCALFE


**PROOF OF SERVICE**

(  ) On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place];or

(  ) I left the Summons, Complaint, and additional notices specified on the Summons (if applicable) in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her, on _____ [date]; or

(  ) After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____[describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

(  ) On _____[date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

(  ) On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

(  ) On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

(  ) I am the plaintiff or an attorney of records for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

(  ) I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgement and received the attached notice and acknowledgment form within twenty days after the date of mailing.

(  ) Other: _____ [specify]

(  ) I was unable to execute service because: _____

_____.

My fee is $_____

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of Server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
[Signature of Server]

_____
[Printed Name]

Address:_____

_____

Phone: _____

Subscribed and sworn to before me, the undersigned Notary Public, on this _____ day of _____, 20__.

_____
Notary Public

My Commission Expires:

_____

Additional information regarding service or attempted service:

_____

_____



**Case Title:**      GIBSON ETAL V CONSUMER TESTING LABORATORIES INC

**Case Number:**   04CV-23-1831

**Type:**           SUMMONS - FILER PREPARED


So Ordered

Maria E Delgado, Benton County Deputy Clerk


Electronically signed by MEDELGADO on 2023-07-13 09:13:00     page 4 of 4

**SUMMONS**

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**CIVIL DIVISION**

**ALEXIS LEAH FREEMAN GIBSON as**
**Ancillary Personal Representative of the**
**ESTATE OF WYATT GARY GIBSON,**
**Deceased and ALL WRONGFUL DEATH**
**BENEFICIARIES**                                                                  **PLAINTIFFS**

**vs.**                              **CASE NO.** _____

**CONSUMER TESTING LABORATORIES, INC.,**
**UL VERIFICATION SERVICES, INC.,**
**EARTHBOUND LICENSING, LLC,**
**EARTHBOUND, LLC, EARTHBOUND PW**
**LLC, ROBERT BURGESS d/b/a BURGESS**
**GROUP a/k/a BOB BURGESS AND ASSOCIATES,**
**MELISSA METCALFE, MANE USA, INC.,**
**GALA NORTH AMERICA, INC., and**
**JOHN DOES 1-10**                                                               **DEFEDANTS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

> ROBERT "BOB" BURGESS
> a/k/a BOB BURGESS & ASSOCIATES
> d/b/a BURGESS GROUP
> 210 N. Walton Blvd., Suite 24
> Bentonville, AR  72712

A lawsuit has been filed against you.  The relief is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Bill D. Reynolds
CADDELL REYNOLDS, P.A.
P.O. Box 184
Fort Smith, AR  72902

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint

 **Additional Notices:  None.**

> **WITNESS MY HAND AND SEAL OF THE COURT this 12th day of July, 2023.**

Brenda DeShields
BENTON COUNTY CIRCUIT CLERK
102 NE A St.
Bentonville, AR  72712

BY:  __(electronically signed)_____
Deputy Clerk

No._____  This summons is for Defendant ROBERT "BOB" BURGESS d/b/a BURGESS GROUP a/k/a BOB BURGESS & ASSOCIATES

**PROOF OF SERVICE**

(  ) On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place];or

(  ) I left the Summons, Complaint, and additional notices specified on the Summons (if applicable) in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her, on _____ [date]; or

(  ) After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____[describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

(  ) On _____[date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

(  ) On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

(  ) On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

(  ) I am the plaintiff or an attorney of records for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

(  ) I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgement and received the attached notice and acknowledgment form within twenty days after the date of mailing.

(  ) Other: _____ [specify]

( ) I was unable to execute service because: _____
_____.

My fee is $_____

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of Server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____        By: _____
[Signature of Server]

_____
[Printed Name]

Address:_____
_____

Phone: _____

Subscribed and sworn to before me, the undersigned Notary Public, on this _____ day of _____, 20__.

_____
Notary Public

My Commission Expires:
_____

Additional information regarding service or attempted service:

_____
_____



**Case Title:**      GIBSON ETAL V CONSUMER TESTING LABORATORIES INC

**Case Number:**    04CV-23-1831

**Type:**         SUMMONS - FILER PREPARED

So Ordered

Maria E Delgado, Benton County Deputy Clerk

Electronically signed by MEDELGADO on 2023-07-13 09:13:10    page 4 of 4

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2023-Jul-13 14:54:51
04CV-23-1831
C19WD06 : 2 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)*]

COURT: _____CIRCUIT_____ COURT OF __BENTON_____ COUNTY

Docket/Case Number: __04CV-23-1831_____

CASE NAME:
PLAINTIFF/
PETITIONER:
ALEXIS LEAH FREEMAN GIBSON as
Ancillary Personal Representative of the
ESTATE OF WYATT GARY GIBSON,
Deceased and ALL WRONGFUL
DEATH BENEFICIARIES

DEFENDANT/
RESPONDENT:
CONSUMER TESTING LABORATORIES, INC.
UL VERIFICATION SERVICES, INC., et al

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):

AFFIDAVIT OF SERVICE FOR
EARTHBOUND, LLC

*Administrative Order No 2.

(g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

(2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

# Affidavit of Process Server

### IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

| ALEXIS LEAH FREEMAN GIBSON, AS ANCILLARY PERSONAL REPRESENTATIVE OF THE ESTATE OF WYATT GARY GIBSON, DECEASED AND ALL WRONGFUL DEATH BENEFICIARIES | VS | CONSUMER TESTING LABORATORIES, INC., ET AL. | 04CV-23-1831 |
|---|---|---|---|
| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |

GILBERT DEL VALLE _____ being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.   RECEIVED 07/13/2023

Service: I served  EARTHBOUND, LLC
_____
NAME OF PERSON / ENTITY BEING SERVED

with (list documents)  SUMMONS; COMPLAINT; AFFIDAVIT;

by leaving with  ROBIN HUTT-BANKS (MANAGING AGENT)                                        At
_____
NAME                                  RELATIONSHIP

☐ Residence
_____
ADDRESS                               CITY / STATE

☒ Business   C/O THE CORPORATION TRUST COMPANY, 1209 ORANGE STREET, WILMINGTON, DE 19801
_____
ADDRESS                               CITY / STATE

On_____07/13/2023_____ AT _____2:45 PM_____
DATE                                  TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on_____
DATE

from_____
CITY                    STATE           ZIP

**Manner of Service:**

☒ CORPORATE

☐ **Personal:** By personally delivering copies to the person being served.

☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of _____ and explaining the general nature of the papers.

☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.

☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

☐ **Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address    ☐ Moved, Left no Forwarding    ☐ Service Cancelled by Litigant  ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other_____

**Service Attempts:** Service was attempted on: (1)_____ (2)_____
DATE          TIME              DATE          TIME

(3)_____ (4)_____ (5)_____
DATE      TIME              DATE      TIME              DATE      TIME

AGE    55   Sex FEMALE Race BLACK Height 5'5   Weight  150    HAIR BLACK

GILBERT DEL VALLE
BRANDYWINE PROCESS SERVERS, LTD.,
PO BOX 1360, WILMINGTON, DE 19899

SUBSCRIBED AND SWORN to before me this 13TH___ day of JULY_____ ,2023.

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires on July 26, 2025

_____
SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of  DELAWARE

NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS