# ATTACHMENT 1

SCOTT A. ELDER (*pro hac vice* application forthcoming)
Scott.Elder@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:   (404) 881-7000
Facsimile:   (404) 881-7777

MEGHAN M. McBERRY (State Bar No. 334464)
Meghan.McBerry@alston.com
**ALSTON & BIRD LLP**
560 Mission Street, Suite 2100
San Francisco, CA  94105-0912
Telephone:   (415) 243-1000
Facsimile:   (415) 243-1001

BROOKE H. BOLENDER (State Bar No. 340689)
Brooke.Bolender@alston.com
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:   (213) 576-1000
Facsimile:   (213) 576-1100

Attorneys for Proposed Intervenor-Defendants
**WALMART, INC. and MEREDITH OPERATIONS CORPORATION**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS LEAH FREEMAN GIBSON,<br><br>Plaintiffs,<br><br>v.<br><br>CONSUMER TESTING LABORATORIES, INC.; UL VERIFICATION SERVICES, INC.; EARTHBOUND LICENSING, LLC; EARTHBOUND, LLC, EARTHBOUND PW LLC, ROBERT BURGESS d/b/a BURGESS GROUP a/k/a BOB BURGESS AND ASSOCIATES; MELISSA METCALFE; MANE USA, INC.; GALA NORTH AMERICA, INC., and JOHN, and DOES 1-10,<br><br>Defendants. | Case No. 5:24-cv-00870-JWH-DTBx<br><br>[Assigned for all purposes to the Honorable John W. Holcomb]<br><br>**[*Redacted Version of Document Proposed to Be Filed Under Seal*]**<br><br>**PROPOSED INTERVENOR-DEFENDANTS WALMART INC. AND MEREDITH OPERATIONS CORPORATION'S OPPOSITION TO DEFENDANT GALA NORTH AMERICA, INC.'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**<br>Date:          January 10, 2025<br>Time:          9:00 a.m.<br>Courtroom:   9D<br><br>Complaint Filed: April 24, 2024<br>Trial Date:      None Set |

# **TABLE OF CONTENTS**

I.    RELEVANT FACTS.................................................................................4

    A.    Procedural History ...................................................................4

    B.    Gala, Ramesh, and Flora ..........................................................5

    C.    Design and Formulation of the Room Spray ............................6

II.    CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 877.6 DOES NOT APPLY. ......................................................................................10

III.    GALA DID NOT MAKE A PRIMA FACIE SHOWING OF GOOD FAITH, AND ITS SETTLEMENT IS INCONSISTENT WITH THE EQUITABLE OBJECTIVES OF SECTION 877.6. ..........................13

    A.    Gala misrepresents its share of the liability. ..........................15

    B.    Gala does not provide an estimate of Plaintiff's total recovery...............17

    C.    Gala says that its financial condition is irrelevant. ..................19

IV.    THE COURT SHOULD DENY GALA'S MOTION OR, IN THE ALTERNATIVE, CONTINUE THE HEARING PENDING FURTHER DISCOVERY. ......................................................................................19

V.    CONCLUSION ................................................................................20

WALMART AND MEREDITH'S OPPOSITION TO GALA'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aspect Grp. v. Movietickets.com, Inc.*,
    2006 WL 5894608 (C.D. Cal. Jan. 24, 2006).....................................................11

*Brashear v. Magnet Media, Inc.*,
    2018 WL 6242169 (C.D. Cal. Sept. 19, 2018).......................................14, 15,16

*City of Grand Terrace v. Super. Ct.*,
    192 Cal. App. 3d 1251 (1987) .......................................14, 16, 19, 20

*Deirmenjian v. Deutsche Bank, A.G.*,
    2010 WL 3034060 (C.D. Cal. July 30, 2010) ...........................................13

*Dole Food Co. v. Super Ct.*,
    242 Cal. App. 4th 894 (2015) ...............................................................14

*Erreca's v. Super. Ct.*,
    19 Cal. App. 4th 1475 (1993) ...............................................................15

*Horton v. Super. Ct.*,
    194 Cal. App. 3d 727 (1987) .........................................................15, 16

*In re Nucorp Energy Sec. Litig.*,
    661 F. Supp. 1403 (S.D. Cal. 1987) ................................................11, 12

*KB Gardena Bldg., LLC v. Whittaker Corp.*,
    2012 WL 273888 (C.D. Cal. Jan. 30, 2012).........................................15

*Keiper v. Victor Valley Transit. Auth.*,
    2022 WL 16955473 (C.D. Cal. Sept. 21, 2022)...........................14, 15

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)..............................................................................11

*Long Beach Mem'l Med. Ctr. v. Super. Ct.*,
    172 Cal. App. 4th 865 (2009) ...........................................................15, 17

*Mahe v. Century Blinds, Inc.*,
    2021 WL 7444581 (Utah Dist. Ct. Sept. 13, 2021)................................18

2

*McCann v. Foster Wheeler LLC*,
    48 Cal. 4th 68 (2010) ........................................................................ 13

*O'Rear v. Kelley*,
    2022 WL 20605286 (Ala. Cir. Ct. Aug. 5, 2022) ................................. 18

*Pac. Res. Assocs. LLC v. Suzy Cleaners*,
    2023 WL 7926795 (S.D. Cal. Nov. 16, 2023) ...................................... 10

*Slaven v. BP Am., Inc.*,
    958 F. Supp. 1472 (C.D. Cal. 1997) .................................................... 10

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*,
    38 Cal. 3d 488 (1985) .................................................................. passim

*Toyota Motor Sales USA v. Super. Ct.*,
    220 Cal. App. 3d 871 (1990) ............................................................... 15

*Wash. Mut. Bank, FA v. Super Ct.*,
    24 Cal. 4th 906 (2001) ........................................................................ 11

**STATUTES**

Cal. Code Civ. Proc. § 877.6 ............................................................... passim

Ga. Code Ann. § 51-12-32 .................................................................... 12

Defendant Gala North America, Inc. ("Gala") asks the Court to determine that its ████████ settlement with Plaintiff was in good faith under California Code of Civil Procedure section 877.6. ECF 167 ("Motion"). Proposed Intervenor-Defendants Walmart Inc. ("Walmart") and Meredith Operations Corporation ("Meredith") oppose Gala's motion. As a threshold matter, the Court should deny Gala's motion because Georgia substantive law applies to this case, negating the application of section 877.6 and particularly its elimination of any crossclaim by Walmart because Georgia law permits an alleged tortfeasor to seek contribution and indemnity from settling joint tortfeasors. And even if California substantive law applies, Gala did not make a prima facie showing of good faith given the role of its employees in the formulation and manufacture of the product that Plaintiff contends is defective and caused his five-year-old son's death. Gala's statements regarding its proportionate liability are unsupported, in conflict with the evidence, and should be rejected. Gala's settlement was not in good faith, and its motion should be denied.

## I.    RELEVANT FACTS

### A.    Procedural History

Five-year-old Wyatt Gibson died on July 16, 2021 as a result of being infected with bacteria that is found predominately in southeast Asia. *See* ECF 56 ¶¶ 30–31, 33, 67, 69. After an investigation by the Centers for Disease Control and Prevention ("CDC") and Consumer Product Safety Commission ("CPSC"), the source of the bacteria was identified as a Better Homes and Gardens Essential Oil Infused Aromatherapy Room Spray with Gemstones, Lavender & Chamomile ("Room Spray") that was manufactured in India by Gala's sister company Ramesh Flowers Private Limited ("Ramesh"). *Id.* ¶¶ 32, 39, 70–74. The Room Spray was imported into the United States by Ramesh's subsidiary, Flora Classique, Inc. ("Flora"). *Id.* ¶ 39. Plaintiff purchased the Room Spray in early 2021 from a Walmart store near his home in Calhoun, Georgia. *Id.* ¶¶ 1, 35.

WALMART AND MEREDITH'S OPPOSITION TO GALA'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

Plaintiff filed two lawsuits to recover wrongful death and survival damages, and both cases are now pending before this Court.[1] The defendants in these lawsuits are Ramesh, Flora, Walmart, and Meredith in Case No. 5:22-cv-00238; and Robert Burgess d/b/a Burgess Group ("Burgess"), Mane USA, Inc. ("Mane"), and Gala in Case No. 5:24-cv-00870.[2] Gala, Ramesh, Flora, Burgess, and Mane settled with Plaintiff and filed motions for good faith settlement determinations. Walmart and Meredith oppose the motions of Gala, Ramesh, and Flora.

## B.    **Gala, Ramesh, and Flora**

Ramesh is headquartered in India and identifies Flora as its "International Sales Office USA." Declaration of Scott A. Elder ("Elder Decl."), Ex. A. Ramesh describes itself as "one of the largest manufacturers and exporters of Home Fragrance and Home Decor products in India since its inception in 1982" and says that Flora "has been a subsidiary of Ramesh Flowers in California for over a decade which extends its support in activities like marketing, distribution and strategic development in the American sub-continent." *Id.*, Ex. B.

Gala, Ramesh, and Flora are all part of the Gala Group, a German company that has operations in Germany, the United Kingdom, Poland, Hungary, India (Ramesh and Flora), and the United States (Gala). Elder Decl., Ex. C. The Gala Group has been owned by the private equity firm Equistone since 2016. *Id.*, Ex. D. The Gala Group acquired majority stakes in Gala, Ramesh, and Flora in 2018 as part of its effort "to expand its product portfolio, increase its geographical footprint and create synergies within a global network to become a leading global candle, home scents & home decor manufacturer." *Id.*, Exs. E–G.

---

[1] The parties in Case No. 5:24-cv-00870 were transferred to this Court, except for Defendant Earthbound, LLC ("Earthbound"). Plaintiff's case against Earthbound remains pending in the U.S. District Court for the Western District of Arkansas (Case No. 5:24-cv-005178).

[2] Case No. 5:24-cv-00870 named additional defendants that have since been dismissed.

5

Gala, Ramesh, and Flora settled with Plaintiff before any significant discovery into their corporate relationships or financial conditions. *See* Elder Decl. Exs. K–P (Flora and Ramesh's objections and responses to Plaintiff's first set of discovery requests). These companies were all represented by the same counsel during the CDC and CPSC investigation of the bacterial contamination in the Room Spray. *Id.*, Ex. CC; *see also id.*, Ex. H (Deposition of Kenneth Hinson) at 195:4-13. Gala and Flora had the same CEO and were represented by the same counsel in this litigation until late May 2024. *Id.*, Ex. L at pp. 28–29 & Ex. U. It is nearly impossible to distinguish Gala, Ramesh, and Flora based on the documents that have been produced in this case. For example, Flora produced a spreadsheet identifying the Room Spray as ***a Gala product***. *Id.*, Ex. EE. The product label for the Room Spray provides Flora's telephone number and a Gala Group email address for customer service. *Id.*, Ex. J. And the key players in the formulation of the Room Spray claimed to be employees of Ramesh and Flora but primarily used Gala Group email addresses. *See, e.g. id.*, Ex. L at pp. 42–43 & Ex. N at p. 18.

## C.    Design and Formulation of the Room Spray

The deposition testimony and documents produced in this case establish that Walmart did not have any input into (1) the formulation of the Room Spray (including whether the product contained sufficient biocide), or (2) the manufacturing process during which the contamination almost certainly occurred given that the subject bacteria is prevalent in India but extremely rare in North America, and the product was imported in a closed container.

Regarding Walmart's involvement in the product's creation, Walmart determined that it wanted to sell a Better Homes and Gardens branded room spray. *See* Elder Decl., Ex. Q at p. 3. Meredith owns the Better Homes and Gardens trademark and licensed it to Walmart. *Id.*, Ex. S at p. 6 & Ex. T at p. 8. Walmart worked with Earthbound on the aesthetic design of the product—i.e., the product's concept and appearance and certain aspects of the packaging. *Id.*, Ex. Q at p. 3. Melissa Metcalfe, who was a Senior Buyer

6

at Walmart and the lead for Walmart on the Room Spray, stated at her deposition that she had "nothing to do with formulations that suppliers use" and explained, "I was only over the aesthetic design of the product and making sure that, again, based off of customer demand I was offering customers what they were looking for from an aesthetics standpoint of, like, the appearance of the bottle itself." *Id.*, Ex. I at 24:20– 25:25; *see also id.*, Ex. I at 33:23–34:8, 51:13-17, 58:21–59:13, 68:2-22, 82:13-17, 107:11-20. Kenneth Hinson, former Senior Director of Product Safety and Compliance at Walmart, also testified that Walmart is "not involved in design and manufacture and things like that, but – but we have standards we expect suppliers to follow based on laws and regulations." *Id.*, Ex. H at 30:8–31:5; *see also id.*, Ex. R at pp. 7–8, 30, 42–43.

The documents confirm that Walmart contracted with Flora to provide the Room Spray, but Walmart was not involved in the product's formulation or manufacture. Under the terms of the contract between Walmart and Flora, Flora had to comply with all laws, deliver a product meeting the approved sample that Flora provided, and produce a product free of all defects. Elder Decl., Ex. DD at FC_00018186–87.[3] Flora selected its parent Ramesh to manufacture the product. Walmart provided only general guidance that the product would be a room spray in select fragrances. Once Walmart ordered a room spray product, Flora worked with Ramesh and Gala to formulate the product and create samples. *Id.*, Ex. Z. Ramesh manufactured the Room Spray in India, and Flora imported the product into the United States and sold it to Walmart.

The Room Spray came in six different fragrances. Mane supplied the lavender and chamomile fragrance that is at issue in this case, and a company called Arylessence supplied the other five fragrances. Elder Decl., Ex. BB at FC_00016790. Mane provided a "ready to use" lavender and chamomile fragrance directly to Ramesh and Flora. *Id.*, Ex. AA. In communications that do not involve Walmart, Mane informed Ramesh and Flora of the fragrance's ingredients, which did not include Kathon, a common biocide.

---

[3] Walmart also had a contract with Ramesh that contained substantially similar requirements. *See* Elder Decl., Ex. GG at WM-GIBSON-0000410–11.

7

*Id.*, Ex. Z at FC_00000135. Conversely, Arylessence included 1.11% to 2.5% Kathon in its "ready to use" fragrances. *Id.*, Ex. BB at FC_00016790. Ramesh and Flora never instructed Mane to add Kathon to the lavender and chamomile fragrance and in fact told Mane that they would add Kathon during the manufacturing process. *Id.*, Ex. AA at FC_00000209 & Ex. FF at Gibson – Ramesh – 0005332. Ramesh created its own "blend sheet" specifying the ingredients for the Room Spray. *Id.*, Ex. Z at FC_00000151. Ramesh added 0.002% of Kathon to each version (fragrance) of the Room Spray and did not take into account the varying amounts of Kathon present (if at all) in the six fragrances. *Id.*, Ex. Z at FC_00000146 & Ex. BB at FC_00016790. CDC and CPSC worked with Gala, Ramesh, and Flora (not Walmart) to investigate the source of the bacterial contamination, which was ultimately identified as Ramesh's factory in India. *Id.*, Ex. BB & Ex. CC; *see also id.*, Ex. H (Deposition of Kenneth Hinson) at 144:8-18, 171:20–172:11.

The documents confirm that Walmart did not specify a product formula and had no involvement in determining the amount of Kathon that Ramesh would add to Ramesh's product formula. Walmart is not a party to (or even copied on) ***any*** of the key communications regarding the development of a product sample, the formulation of the Room Spray, or the use of Kathon. After Earthbound sent a Request for Quote ("RFQ") inviting Flora to submit a sample of the Room Spray and specifying that the lavender and chamomile fragrance would be supplied by Mane (Elder Decl., Ex. Y), Gala, Ramesh, Flora, Burgess,[4] and Mane—not Walmart—had a series of conversations about formulating the product and producing a sample, including:



---

[4] Burgess was "the representation for Gala Group and their factory or the factories that they owned." Elder Decl., Ex. I (Deposition of Melissa Metcalfe) at 35:4–36:17.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WALMART AND MEREDITH'S OPPOSITION TO GALA'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   In short, Ramesh and Flora (and perhaps Gala) formulated the Room Spray, and while

20   Walmart purchased the product, there is no evidence that Walmart told Ramesh and

21   Flora what formula to use or specifically how much Kathon to add. In fact, the evidence

22   shows otherwise.

23   **II.    CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 877.6 DOES**

24   **NOT APPLY.**

25        California Code of Civil Procedure section 877.6 is considered substantive law.

26   *See Slaven v. BP Am., Inc.*, 958 F. Supp. 1472, 1477–78 (C.D. Cal. 1997); *Pac. Res.*

27   *Assocs. LLC v. Suzy Cleaners*, 2023 WL 7926795, at *5 (S.D. Cal. Nov. 16, 2023)

28   ("Although California Code of Civil Procedure section 877.6 is the procedural

mechanism for section 877, the case law is clear that state settlement provisions amount to substantive, rather than purely procedural, law." (quotations omitted)). The Court should deny Gala's motion because Georgia's substantive law, not California's, applies to this case brought by a Georgia resident related to a product purchased and used in Georgia.

The Court must apply California's choice-of-law rules to determine which state's substantive law applies to this issue. *Aspect Grp. v. Movietickets.com, Inc.*, 2006 WL 5894608, at \*5 (C.D. Cal. Jan. 24, 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). California courts apply a three-part "governmental interest test" to resolve choice-of-law disputes. *See In re Nucorp Energy Sec. Litig.*, 661 F. Supp. 1403, 1412 (S.D. Cal. 1987); *see also Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 919–20 (2001).

Under California's test, the court first examines the legal issue to determine if the law differs in the opposing jurisdictions. *Nucorp*, 661 F. Supp. at 1412. If there is a difference between the laws in the jurisdictions, the court then determines if a true conflict exists by examining each jurisdiction's interest in the application of its own law. *Id.* If there is a conflict, the court evaluates each jurisdiction's interest and applies the law of the state whose interest would be more impaired if its law were not applied. *Id.* In this case, the laws regarding a joint tortfeasor's right of contribution and indemnity in Georgia and California are different, pose a true conflict, and Georgia's interests would be more impaired if Walmart's right of contribution was terminated by applying California law.

Applying the first part of the test, the laws in Georgia and California plainly differ as to whether a non-settling party can seek equitable contribution or indemnity from a settling alleged joint tortfeasor. In California, a determination that a joint tortfeasor settled with the plaintiff in good faith extinguishes the non-settling party's rights of equitable contribution and indemnity. Cal. Civ. Proc. Code § 877.6(c) ("A determination by the court that the settlement was made in good faith shall bar any other

11

joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."). Georgia law, however, specifically preserves a non-settling party's rights of contribution and indemnity when an alleged joint tortfeasor and plaintiff settle. *See* Ga. Code Ann. § 51-12-32(a) ("Without the necessity of being charged by action or judgment, the right of a joint trespasser to contribution from another or others shall continue unabated and shall not be lost or prejudiced by compromise and settlement of a claim or claims for injury to a person or property or for wrongful death and release therefrom.") & (c) ("Without the necessity of being charged by action or judgment, the right of indemnity, express or implied, from another or others shall continue unabated and shall not be lost or prejudiced by compromise and settlement of a claim or claims for injury to a person or property or for wrongful death and release therefrom.").

Under the second part of the test, the court must confirm that an actual choice of law problem exists by determining whether each state has an interest in applying its law to the case. Here, a choice of law problem exists as both states have such an interest. California has an interest in the effect of its settlement laws on joint tortfeasor liability as the case is being adjudicated in a federal court in California. And Georgia has an interest in applying its laws on contribution and indemnity among settling and non-settling defendants as the Room Spray was purchased in Georgia, Wyatt Gibson was exposed to bacterial contamination and became ill in Georgia, and Plaintiff remains a Georgia resident. *See* ECF 56 ¶¶ 1, 35, 65–66.

Under the third part of the test, the court must "make a proper allocation of respective spheres of lawmaking influence" and determine which state's interest would be more impaired if its law is not applied. *Nucorp*, 661 F. Supp. at 1413. In the context of this issue, the question for the court is which state is more concerned with defining the overall settlement outcome. *See id.* In this case, Georgia is more concerned with defining potential liability among the alleged joint tortfeasors because (1) the harm

12

occurred within its borders and (2) the harm was suffered by its citizen. *See id.* California, by contrast, has almost no connection to this case, besides being the state of residence of one defendant (Flora). None of the significant events occurred in California. Walmart is located in Arkansas, and the product was manufactured in India. Under these circumstances, "a failure to apply California law would effect a less significant impairment because 'California's interest in applying its laws providing a remedy to, or facilitating recovery by, a potential plaintiff in a case in which the defendant's allegedly tortious conduct occurred in another state is less than its interest when the defendant's conduct occurred in California.'" *Deirmenjian v. Deutsche Bank, A.G.*, 2010 WL 3034060, at *13 (C.D. Cal. July 30, 2010) (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 99 (2010)). Precisely so here. California has minimal interest in applying its law to this case involving a nonresident plaintiff against (almost entirely) nonresident defendants for conduct that occurred outside its borders. Even if California shared some concern in defining the settlement outcome, its interest is far less than Georgia's. As California courts recognize, Georgia "ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders" and there is no reason to reach a different conclusion here. *McCann*, 48 Cal. 4th at 97–98.

Thus, California's three-part governmental interest test indicates that Georgia's substantive law applies instead of California's. There is (1) a conflict between state laws, (2) a strong interest in applying Georgia law and only a minimal (at best) interest in applying California law, and (3) more impairment to Georgia's interests if its law is not applied.

## III. <u>GALA DID NOT MAKE A PRIMA FACIE SHOWING OF GOOD FAITH, AND ITS SETTLEMENT IS INCONSISTENT WITH THE EQUITABLE OBJECTIVES OF SECTION 877.6.</u>

In *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488 (1985), the California Supreme Court outlined a multi-factor test for determining whether a settlement was made in good faith pursuant to section 877.6. The court explained that

13

"the intent and policies underlying section 877.6 require that a number of factors be taken into account including"

    (1)    a rough approximation of the plaintiff's total recovery and the settlor's proportionate liability;

    (2)    the amount paid in settlement;

    (3)    the allocation of settlement proceeds;

    (4)    a recognition that a settlor should pay less in settlement than it would if it were found liable after a trial;

    (5)    the financial conditions and insurance policy limits of settling defendants; and

    (6)    the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.

*Id.* at 499. These factors are not exhaustive. *Keiper v. Victor Valley Transit. Auth.*, 2022 WL 16955473, at *1–2 (C.D. Cal. Sept. 21, 2022) (citing *Dole Food Co. v. Super Ct.*, 242 Cal. App. 4th 894, 909 (2015)). Nor does every factor apply in every case. *Id.* The keystone factor is whether the settling defendant pays its proportionate share of liability. *See id.* ("Proportionate liability is one of the most important factors a court must examine when determining whether a settlement has been made in good faith under section 877.6." (cleaned up)).

Only ***after*** the settling defendant makes a prima facie showing of good faith does the burden of proof shift to the party contesting the settlement to demonstrate that "the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of [section 877.6], and thus not made in 'good faith.'" *Tech-Bilt*, 38 Cal. 3d at 499–500; *see also Brashear v. Magnet Media, Inc.*, 2018 WL 6242169, at *2–3 & n.1 (C.D. Cal. Sept. 19, 2018). If any of the *Tech-Bilt* factors is contested, there must be "a sufficient evidentiary basis to enable the court to consider and evaluate the various aspects of the settlement." *City of Grand Terrace v. Super. Ct.*, 192 Cal. App. 3d 1251, 1263 (1987). If there is not "substantial evidence to support a

14

critical assumption as to the nature and extent of a settling defendant's liability, then a determination of good faith based upon such assumption is an abuse of discretion." *Keiper*, 2022 WL 16955473, at *2 (citing *Toyota Motor Sales USA v. Super Ct.*, 220 Cal. App. 3d 871, 864 (1990)).

### A. Gala misrepresents its share of the liability.

The first two *Tech-Bilt* factors are the most important to establish that a settlement was made in good faith. *KB Gardena Bldg., LLC v. Whittaker Corp.*, 2012 WL 273888, at *2 (C.D. Cal. Jan. 30, 2012)). These factors, analyzed together, create a reasonable range test whereby the court can evaluate whether the settling defendant's proposed settlement amount (factor two) roughly approximates its proportionate share of liability of the plaintiff's total recovery (factor one). *See Tech-Bilt*, 38 Cal. 3d at 499.

*First*, a court must make a "rough approximation" of what the plaintiff would actually recover if the case were to go to trial. *Horton v. Super. Ct.*, 194 Cal. App. 3d 727, 735 (1987) (citing *Tech-Bilt*, 38 Cal. 3d at 501)). The court does not look to the plaintiff's claims for damages. *Id.* Instead, it "utilize(s) its own experience, the attorneys' evaluations, and expert opinion in making a decision upon the valuation issue." *Erreca's v. Super. Ct.*, 19 Cal. App. 4th 1475, 1495 (1993).

*Second*, the court determines the settling defendant's proportionate share of liability. *Tech-Bilt*, 38 Cal. 3d at 501. Indeed, "the settling party's proportionate liability is one of the most important factors going to whether the settlement is in good faith." *Brashear*, 2018 WL 6242169, at *3 (citing *Long Beach Mem'l Med. Ctr. v. Super. Ct.*, 172 Cal. App. 4th 865, 873–74 (2009)). "To adequately assess this element, the Court must know the liability arising from the plaintiff's claims, and consider the defendants' relative culpability for it." *Id.*

*Third*, the court multiplies its valuation of the case and the settling defendant's proportionate share of liability. *Brashear*, 2018 WL 6242169, at *3. The court compares that product to the proposed settlement amount to determine whether the values are in the same "ballpark." *Id.* at *2–3. While courts recognize that "a settlor should pay less

15

in settlement than [it] would if it were found liable after a trial," *Tech-Bilt*, 38 Cal. 3d at 499, the settlement cannot be disproportionately low because the good faith requirement for settlement proceedings "was imposed primarily to protect the interests of non-settling defendants." *Brashear*, 2018 WL 6242169, at *2 (citing *City of Grand Terrace*, 192 Cal. App. 3d at 1263).

To make the required prima facie showing of good faith, the settling defendant must calculate the total possible liability and present that calculation to the court so that the court can evaluate the proposed settlement amount. *See Brashear*, 2018 WL 6242169, at *3 ("Plaintiff again asserts that the 'amount of the settlement is a very substantial percent of the total possible liability,'. . . but does not quantify this "total possible liability" so the Court could decide for itself whether the settlement is a substantial percent."). Gala fails to make a prima facie showing of good faith in its motion and does not give the court ***any*** approximation of Plaintiff's total recovery if this case were to go to trial. *See Horton*, 194 Cal. App. 3d at 735 (citing *Tech-Bilt,* 38 Cal. 3d at 501)). Gala simply asserts that it "bears no 'proportionate share' of the liability in this matter" because it "had no involvement in the aromatherapy spray's development, manufacturing, or distribution, and [] it has never been in corporate relationships with the manufacturer defendant Ramesh or the distributor defendant Flora." Motion at 2, 6. Gala further argues that "[i]n the unlikely scenario that Gala NA were to be found at fault, its share of the fault would be minimal, and a drastically smaller share than the fault attributable to the manufacturer and distributor defendants." *Id.* The only support for these assertions are inadmissible statements in a declaration from Gala's outside counsel.

Contrary to Gala's position in its motion, the documents that have been produced in this litigation show that Gala could have direct liability or vicarious liability based on the actions of Flora and Ramesh. Gala and Flora had the same officers and legal counsel (including in this case), the individuals involved in the formulation of the Room Spray used Gala email addresses, and the product's label directed users to contact Gala

16

for customer service. *See* Elder Decl., Ex. H at 195:4-13; Ex. J; Ex. L at pp. 28–29, 42–43; Ex. N at p. 18; Ex. U; Ex. CC; Ex. EE. In addition, Gala worked with CDC and CPSC to investigate the source of the bacterial contamination. The record raises sufficient questions about Gala's liability and at this point there is no basis to conclude that "its share of the fault would be minimal." Gala has provided no evidence from which the Court could determine that its settlement with Plaintiff was in good faith, and any questions should be resolved through discovery.

### B.    Gala does not provide an estimate of Plaintiff's total recovery.

Gala's proposed settlement is not within the "ballpark" of the amount that it should pay. Even when a settling defendant's liability is limited (Gala's is not), that defendant can still owe a significant settlement amount when the total potential damages are high. For example, in *Long Beach Memorial Center v. Superior Court*, 172 Cal. App. 4th 865, 870 (2009), a medical malpractice case involving an infant born with neurological damage, "Plaintiffs calculated that their damages, including future care, lost future earnings, and past medical expenses would exceed $10 million" and made a settlement demand of $8 million to all defendants. The court held that a settlement by one of the doctors for $200,000 was "wholly disproportionate" because "[e]ven a slight probability of liability on [the doctor's] part would warrant a contribution more significant than 2 percent." *Id.* at 873–74.

It is telling that Gala does not even suggest a total liability figure and characterizes its ███████ settlement as "substantial on its face, notwithstanding Gala NA's denial of liability." Motion at 7. Gala's settlement is not "substantial," especially considering the categories of damages that Plaintiffs requests in the Fist Amended Complaint:

   a.    Past mental anguish in the form of emotional pain, torment, and suffering experienced only by one who has suffered the loss of a child;

   b.    Future mental anguish in the form of emotional pain, torment, and suffering experienced only by one who has suffered the loss of a child;

c.    Past physical pain of the deceased and the statutory beneficiary;

d.    Future physical pain of the statutory beneficiary;

e.    Past medical/funeral expenses;

f.    Loss of a child's love, guidance, and support;

g.    Pre-death fright;

h.    Fear of death;

i.    Pre-death pain, either emotionally and/or physically;

j.    Funeral and burial expenses;

k.    Loss of earnings by Wyatt Gibson;

l.    Physical and mental impairment;

m.    Physical and mental pain and suffering;

n.    Loss of care, comfort, and guidance; and

o.    Loss of life.

ECF 56 ¶¶ 506–508. A case such as this one that involves the death of a young child and seeks both wrongful death and survival damages is likely to result in a total recovery in excess of $10 million. *See, e.g.*, *Mahe v. Century Blinds, Inc.*, 2021 WL 7444581 (Utah Dist. Ct. Sept. 13, 2021) ($25 million awarded for death of three-year-old girl from custom-made window blinds). As an example, Plaintiff's counsel obtained a $15 million verdict in a 2022 case involving the wrongful death of an eight-year-old boy who was in foster care in Alabama. *O'Rear v. Kelley*, 2022 WL 20605286 (Ala. Cir. Ct. Aug. 5, 2022). And recent trials of wrongful death cases in California involving allegedly defective products have resulted in eight-figure compensatory damages awards. *See, e.g.*, Elder Decl., Ex. V ($21.1 million awarded for death of 48-year-old man from WaveRunner that exploded), Ex. W ($32.3 million—plus $75 million in punitive damages—awarded for death of 45-year-old man who was exposed to asbestos-containing products while working as a janitor during a remodel and renovation of a large office building complex in the 1990s), & Ex. X ($12 million awarded for death of 51-year-old woman from explosion of fuel tanks on the tractor

18

1  trailer she was driving for work).

2  **C.    Gala says that its financial condition is irrelevant.**

3  Gala says that its financial condition "is not relevant to this settlement, as the

4  amount was not based on Gala NA's insurance or ability to make payment." Motion at

5  7. But the settling defendant must provide sufficient evidence to enable the court to

6  evaluate the settlement's evidentiary basis. *City of Grand Terrace*, 192 Cal. App. 3d at

7  1264. In *City of Grand Terrace*, an automobile passenger sued her husband for negligent

8  driving and the city for defective highway design. *Id.* at 1255–56. The trial court found

9  that an enforceable family-exclusion clause in the husband's automobile liability

10  insurance policy excluded coverage for his wife's serious permanent injuries. *Id.* at

11  1256. The wife agreed to dismiss her complaint against her husband in exchange for

12  $60,000 from the insurer and dismissal of its collateral action for declaratory judgment.

13  *Id.* The trial court granted the motion for good faith settlement. *Id.* at 1257. The city

14  sought a writ to vacate the good faith settlement determination. *Id.* The appellate court

15  held that the trial court abused its discretion in granting a good faith settlement because

16  the husband as the settling defendant never submitted the insurance policy into evidence

17  **and** did not provide evidence regarding his financial condition. The appellate court held

18  that further evidence was necessary to determine if the settlor had personal assets as

19  "personal assets . . . could be required in order to protect the non-settlors who, under

20  section 877, subdivision (a), would be entitled to a set-off for amounts previously paid

21  against any judgment ultimately rendered against them." *Id.* at 1264. Since Gala does

22  not provide **any** financial data, it has failed to establish prima facie evidence of a good

23  faith settlement.

24  **IV.    THE COURT SHOULD DENY GALA'S MOTION OR, IN THE**

25  **ALTERNATIVE, CONTINUE THE HEARING PENDING FURTHER**

26  **DISCOVERY.**

27  If the Court is not inclined to deny Gala's motion at this time, Walmart requests

28  that the hearing be continued so all the discovery needed to evaluate the settlement can

19

occur—including additional discovery into Gala's role in the formulation, manufacture, and distribution of the product and its relationships with Ramesh, Flora, and the Gala Group. *See, e.g.*, *City of Grand Terrace*, 192 Cal. App. 3d at 1264–65 ("We have determined that it would be appropriate for the objecting nonsettlor to move for a continuance of the hearing, if necessary, for the purpose of gathering facts, which could include further formal discovery, to support its statutory burden of proof as to all *Tech-Bilt* factors nonsettlors placed in issue in order that the matter can be fully and fairly litigated."); *see also id.* at 1265 ("As we indicated earlier in this opinion, this could necessarily lead to motions for further discovery, additional declarations, and counter declarations by the parties and a delay in the proceedings, but this procedure will ensure that the expanded scope of the hearing dictated by *Tech-Bilt* will be followed, the evidence will be intelligently assessed, and the objectives of *Tech-Bilt* will be attained.").

## V.   <u>CONCLUSION</u>

Based upon the foregoing points and authorities and the evidence submitted, Walmart and Meredith respectfully request that the Court deny Gala's motion.

Dated:  December 20, 2024

**ALSTON & BIRD LLP**


By: */s/ Brooke H. Bolender*
Brooke H. Bolender

Attorneys for Proposed Intervenor-Defendants WALMART INC. and MEREDITH OPERATIONS CORPORATION

WALMART AND MEREDITH'S OPPOSITION TO GALA'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT